Christopher Lovrien (State Bar No. 230546)
Email: cjlovrien@jonesday.com
Brian D. Hershman (State Bar No. 168175)
Email: bhershman@jonesday.com
Erica L. Reilley (State Bar No. 211615)
Email: elreilley@jonesday.com
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071.2300
Telephone: +1.213.489.3939
Facsimile:  +1.213.243.2539

Attorneys for Defendants
AHMED AL-RUMAIHI and AYMAN SABI

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIG3 LLC, a limited liability company; O'SHEA JACKSON A/K/A ICE CUBE, an individual; and JEFF KWATINETZ, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> AHMED AL-RUMAIHI, an individual; FAISAL AL-HAMADI, an individual; AYMAN SABI, an individual; SHEIKH ABDULLAH BIN MOHAMMED BIN SAU AL THANI, an individual and as CEO of Qatar Investment Authority; and DOES 1 - 100, <br><br> Defendants. | No. 2:18−cv−3466 DMG (SKx) <br><br> Assigned for all purposes to Hon. Dolly M. Gee <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16** <br><br> Hearing Date:   June 1, 2018 <br> Hearing Time:  9:30 a.m. <br> Courtroom:       8C |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 1, 2018, at 9:30 a.m., or as soon thereafter as counsel may be heard in Courtroom 8C of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California, 90012, before the Honorable Dolly M. Gee, defendants Ahmed Al-Rumaihi and Ayman Sabi (collectively, the "Investors") will and hereby do move to strike Plaintiffs' First Amended Complaint pursuant to California Civil Procedure Code Section 425.16, *et. seq.*, and for an award of attorneys' fees and costs.

The Investors bring this motion on the grounds that Plaintiffs' First Amended Complaint should be stricken because it is based on statements made in a public forum and relating to a matter of public interest. Furthermore, Plaintiffs cannot establish, as a matter of law, a probability of prevailing on the merits of their claims because they cannot satisfy the necessary elements of any of their claims.

The Investors met and conferred with Plaintiffs' counsel regarding this motion as required by Central District Local Rule 7-3 in an email exchange on April 25, 2018, as well as in subsequent email and telephonic communications.

This motion is based upon this Notice of Motion and Motion, the concurrently filed Memorandum of Points and Authorities in support thereof, the concurrently filed Declaration of Brian D. Hershman and exhibits thereto, and the concurrently filed Request for Judicial Notice. In addition, this motion is based on all records and files in this action, any argument that may be requested at the hearing on this matter, and any and all other matters that this Court deems just and proper.

1    Dated: May 4, 2018                    Respectfully submitted,

2                                          JONES DAY

3

4                                          By:*/s/ Brian D. Hershman*
                                               Brian D. Hershman
5
                                           Attorneys for Defendants
6                                          AHMED AL-RUMAIHI and AYMAN
                                           SABI
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFFS'
FIRST AMENDED COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16**

1 | Christopher Lovrien (State Bar No. 230546)
Email: cjlovrien@jonesday.com
2 | Brian D. Hershman (State Bar No. 168175)
Email: bhershman@jonesday.com
3 | Erica L. Reilley (State Bar No. 211615)
Email: elreilley@jonesday.com
4 | JONES DAY
555 South Flower Street
5 | Fiftieth Floor
Los Angeles, CA 90071.2300
6 | Telephone: + 1.213.489.3939
Facsimile:  +1.213.243.2539
7 |

8 | Attorneys for Defendants
AHMED AL-RUMAIHI and AYMAN SABI
9 |

10 | UNITED STATES DISTRICT COURT

11 | CENTRAL DISTRICT OF CALIFORNIA

12 |

13 | BIG3 LLC, a limited liability
company; O'SHEA JACKSON A/K/A
14 | ICE CUBE, an individual; and JEFF
KWATINETZ, an individual,
15 |

16 | Plaintiffs,

17 | v.

18 | AHMED AL-RUMAIHI, an
individual; FAISAL AL-HAMADI, an
19 | individual; AYMAN SABI, an
individual; SHEIKH ABDULLAH
20 | BIN MOHAMMED BIN SAU AL
THANI, an individual and as CEO of
21 | Qatar Investment Authority; and DOES
1 - 100,
22 |

23 | Defendants.

No. 2:18−cv−3466 DMG (SKx)

Assigned for all purposes to
Hon. Dolly M. Gee

**MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT OF  DEFENDANTS'
MOTION TO STRIKE
PLAINTIFFS' FIRST AMENDED
COMPLAINT PURSUANT TO
CALIFORNIA CODE OF CIVIL
PROCEDURE § 425.16**

Hearing Date:  June 1, 2018
Hearing Time:  9:30 a.m.
Courtroom:      8C

24 |

25 |

26 |

27 |

28 |

# TABLE OF CONTENTS

**Page**

I.    FACTUAL BACKGROUND ........................................................................ 2

II.   LEGAL STANDARD .............................................................................. 4

III.  ARGUMENT ......................................................................................... 6

    A.    BIG3's Claims Arise From Allegations That Are Protected Activities Under the Anti-Slapp Statute ................................................ 7

        1.    The Alleged Statements Forming The Basis Of BIG3's Claims Were Made In A Public Forum .................................... 7

        2.    The Alleged Statements Forming The Basis Of BIG3's Claims Concern An Issue Of Public Interest ............................ 9

            (a)    BIG3, Ice Cube And Kwatinetz Are All In The Public Eye .......................................................... 10

            (b)    The Public Is Interested In The Content Of The Statements ...................................................... 12

    B.    BIG3 Cannot Demonstrate A Probability Of Prevailing On The Merits Of Its Claims .................................................................. 15

        1.    BIG3 Cannot Prevail On Its Defamation Or Defamation Per Se Claims ........................................................................ 15

            (a)    BIG3 Cannot Demonstrate That The Statements Were Published By The Investors ........................... 16

            (b)    BIG3 Cannot Demonstrate That The Statements Were Made About Each Of The Plaintiffs Asserting The Defamation Claims ....................................... 17

            (c)    BIG3 Cannot Demonstrate That The Statements Are False Statements Of Fact ............................... 18

            (d)    Kwatinetz—The Only Relevant Plaintiff—Is A Public Figure And Therefore Must Show The Allegedly Defamatory Statements Were Made With Actual Malice ................................................. 19

        2.    BIG3 Cannot Prevail On Its Trade Libel Claim ...................... 21

        3.    BIG3 Cannot Prevail On Its Intentional Interference with Prospective Economic Relations Claim ................................. 23

IV.   THE COURT SHOULD AWARD THE INVESTORS THEIR ATTORNEYS' FEES AND COSTS INCURRED IN BRINGING THIS MOTION .................................................................................. 24

V.    CONCLUSION .................................................................................. 24

- i -

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO CODE OF CIVIL PROCEDURE § 425.16**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Ampex Corp. v. Cargle,*
  128 Cal. App. 4th 1569 (2005)..............................................................8

*Annette F. v. Sharon S.,*
  119 Cal. App. 4th 1146 (2004)......................................................20, 21

*Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.,*
  47 Cal. App. 4th 464 (1996)...............................................................23

*Averill v. Superior Court,*
  42 Cal. App. 4th 1170 (1996)...........................................................8, 9

*Barrett v. Rosenthal,*
  40 Cal. 4th 33 (2006)............................................................................8

*Blatty v. New York Times Co.,*
  42 Cal. 3d 1033 (1986).......................................................................17

*Braun v. Chronicle Publ'g Co.,*
  52 Cal. App. 4th 1036 (1997)...............................................................7

*Briggs v. Eden Council for Hope & Opportunity,*
  19 Cal. 4th 1106 (1999)........................................................................9

*Carver v. Bonds,*
  135 Cal. App. 4th 328 (2005)...............................................................6

*Cepeda v. Cowles Magazines & Broad., Inc.,*
  392 F.2d 417 (9th Cir. 1968)..............................................................20

*Comedy III Prods., Inc. v. Gary Saderup, Inc.,*
  25 Cal. 4th 387 (2001)........................................................................20

- ii -

*ComputerXpress, Inc. v. Jackson*,
    93 Cal. App. 4th 993 (2001) .......................................................................... 22

*D.C. v. R.R.*,
    182 Cal. App. 4th 1190 (2010) ....................................................................... 9

*Damon v. Ocean Hills Journalism Club*,
    85 Cal. App. 4th 468 (2000) ........................................................................... 7

*DC Comics v. Pac. Pictures Corp.*,
    706 F.3d 1009 (9th Cir. 2013) ........................................................................ 1

*Equilon Enters. v. Consumer Cause, Inc.*,
    29 Cal. 4th 53 (2002) ..................................................................................... 5

*Ferlauto v. Hamsher*,
    74 Cal. App. 4th 1394 (1999) ....................................................................... 18

*Flatley v. Mauro*,
    39 Cal. 4th 299 (2006) ................................................................................... 6

*Flores v. Von Kleist*,
    739 F. Supp. 2d 1236 (E.D. Cal. 2010) ....................................................... 16

*Forte v. Jones*,
    No. 1:11-CV-0718 AWI BAM, 2013 WL 1164929 (E.D. Cal. Mar.
    20, 2013) ....................................................................................................... 18

*Gallagher v. Connell*,
    123 Cal. App. 4th 1260 (2004) ...................................................................... 5

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ..................................................................................... 20

*Gressett v. Contra Costa Cty.*,
    No. C-12-3798 EMC, 2013 WL 2156278 (N.D. Cal. May 17, 2013) ............... 16

*Hall v. Time Warner, Inc.*,
    153 Cal. App. 4th 1337 (2007) .................................................................... 10

- iii -

*Havens v. Autozoners, LLC,*
   No. 2:16-CV-02503-KJM-GGH, 2017 WL 2546816 (E.D. Cal.
   June 13, 2017) ................................................................................... 16

*Hecimovich v. Encinal Sch. Parent Teacher Org.,*
   203 Cal. App. 4th 450 (2012) .............................................................. 4

*Jackson v. Mayweather,*
   10 Cal. App. 5th 1240, 1254 (2017) .................................................. 10

*Kearney v. Foley and Lardner,*
   553 F. Supp. 2d 1178 (S.D. Cal. 2008) .............................................. 24

*Ketchum v. Moses,*
   24 Cal. 4th 1122 (2001) ..................................................................... 24

*Mann v. Quality Old Time Serv., Inc.,*
   139 Cal. App. 4th 328 (2006) ............................................................ 22

*Manzari v. Associated Newspapers Ltd.,*
   830 F.3d 881 (9th Cir. 2016) ............................................................. 20

*Martinelli v. Int'l House USA,*
   161 Cal. App. 4th 1332 (2008) .......................................................... 16

*McGarry v. Univ. of San Diego,*
   154 Cal. App. 4th 97 (2007) .............................................................. 19

*Navellier v. Sletten,*
   29 Cal. 4th 82 (2002) .......................................................................... 5

*Nygard, Inc. v. Uusi-Kerttula,*
   159 Cal. App. 4th 1027 (2008) ................................................... 8, 9, 15

*Okorie v. Los Angeles Unified Sch. Dist.,*
   14 Cal. App. 5th 574, 590 (2017) .................................................. 5, 15

*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP,*
   18 Cal. App. 5th 95, 112 (2017) .......................................................... 5

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO CODE OF CIVIL PROCEDURE § 425.16**

*Overhill Farms, Inc. v. Lopez*,
 190 Cal. App. 4th 1248 (2010)........................................................................18

*PAI Corp. v. Integrated Sci. Sols., Inc.*,
 No. C-06-5349 ................................................................................................16

*Reed v. Gallagher*,
 248 Cal. App. 4th 841 (2016)........................................................................21

*Rusheen v. Cohen*,
 37 Cal. 4th 1048 (2006)..................................................................................6

*Ryll v. Merck & Co.*,
 111 F. App'x 535 (9th Cir. 2004)..................................................................16

*Scott v. Metabolife Int'l, Inc.*,
 115 Cal. App. 4th 404 (2004)..........................................................................5

*Seelig v. Infinity Broad. Corp.*,
 97 Cal. App. 4th 798 (2002)..........................................................................18

*Summit Bank v. Rogers*,
 206 Cal. App. 4th 669 (2012)..................................................................19, 22

*Taus v. Loftus*,
 40 Cal. 4th 683 (2007)..................................................................................15

*Total Call Int'l, Inc. v. Peerless Ins. Co.*,
 181 Cal. App. 4th 161 (2010)........................................................................22

*Varian Med. Sys., Inc. v. Delfino*,
 35 Cal. 4th 180 (2005)....................................................................................6

*Wilbanks v. Wolk*,
 121 Cal. App. 4th 883 (2004)..................................................................7, 8, 9

*Williams v. Salvation Army*,
 No. 2:14-CV-06138-ODW, 2015 WL 685356 (C.D. Cal. Feb. 18,
 2015)..............................................................................................................16

- v -

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO CODE OF CIVIL PROCEDURE § 425.16**

*ZL Techs., Inc. v. Does 1-7,*
   13 Cal. App. 5th 603, 624 (2017) ........................................................................ 18

STATUTES

Cal. Civ. Proc. Code § 425.16(b)(1) ...................................................................... 15

Cal. Civ. Proc. Code § 425.16(e) ............................................................................. 7

Cal. Civ. Proc. Code § 425.16 (e)(4) ....................................................................... 8

Cal. Code Civ. Proc. § 425.16(c) ........................................................................... 24

California Civil Procedure Code § 425.16, *et. seq.* ................................................. 1

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

Plaintiffs BIG3 LLC,[1] O'Shea Jackson (a/k/a "Ice Cube"), and Jeff

3

Kwatinetz (collectively, "BIG3") have sued defendants Ahmed Al-Rumaihi and

4

Ayman Sabi (together, the "Investors") for defamation and related claims arising

5

from allegations that a non-party (Roger Mason) attributed racially inflammatory

6

statements to Kwatinetz based on information purportedly received from another

7

non-party (Kai Henry) and conveyed to yet another non-party (Jerome Williams).

8

Although the Investors submit these allegations fail to give rise to *any* actionable

9

claim against them, to the extent any claim could lie against them, it is subject to

10

strike under California Civil Procedure Code Section 425.16, *et. seq.*, (the "anti-

11

SLAPP statute"),[2] because it is based on conduct that is privileged and protected as

12

a matter of law.

13

To start, BIG3's allegations are based entirely on statements made in a public

14

forum and in connection with a matter of public interest.  BIG3 asserts that the

15

statements were made to "numerous individuals" and in a "press release" as part of

16

"public relations efforts," satisfying the public forum prong of the anti-SLAPP

17

statute.  Moreover, the statements address issues of public interest because, as

18

demonstrated by the extensive media and press coverage, the public is interested in

19

the BIG3 basketball league, Ice Cube and Kwatinetz generally and the nature of the

20

allegations specifically.

21

Moreover, BIG3 cannot satisfy its burden to present competent evidence

22

establishing a probability of prevailing on the merits of its claims.  Indeed, because

23

the purported defamatory statements involve double and triple hearsay, or are so

24
25
26

[1] The BIG3 LLC is a defunct Delaware limited liability company and does not appear to be a proper plaintiff.  The BIG3 Basketball LLC is a Delaware limited liability company in the business of running a professional, 3-on-3 basketball league.  For purposes of this motion, and without waiving any rights or defenses, the Investors will assume that BIG3 intends to refer to the company involved in running the basketball league.

27
28

[2] *See DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1013 (9th Cir. 2013) ("We have held that [an anti-SLAPP Motion] is available against state law claims brought in federal court.").

- 1 -

vague and conclusory as to constitute non-actionable opinions as a matter of law, BIG3 has failed to plead the most basic elements of its claims.

Accordingly, the Investors ask this Court to strike BIG3's First Amended Complaint pursuant to the anti-SLAPP statute with prejudice and award the Investors attorneys' fees and costs in bringing this Motion.

## I.   **FACTUAL BACKGROUND**

The BIG3 league is a 3-on-3 professional basketball association founded by Ice Cube and Jeff Kwatinetz.  FAC ¶ 1.  On July 14, 2017, Sport Trinity, established by the Investors, invested in the BIG3 league, agreeing to contribute $11.5 million in return for a stake in the league.  FAC ¶ 37, 41.

Sport Trinity initially contributed $6.5 million (of its $11.5 million commitment) in July 2017, and an additional $1 million in November 2017.  Ex. B, p. 6.[3]  BIG3 understood that Sport Trinity's immediate cash injection was necessary to ensure the league's survival; the season was advancing full-throttle and expenses were mounting.  *Id*.  However, it was understood that certain critical issues related to the corporate governance structure, the financial records (which were a mess) and the management team would need to be addressed before additional funds would be forthcoming.  *Id*.

As the Investors' concerns increased throughout the fall of 2017, the Investors engaged in discussions with Kwatinetz and certain league executives.  Ex. B, p. 9.  Chief among the Investors' concerns was the failure of BIG3 to follow the corporate governance structure that had been negotiated into the agreement under which Sport Trinity made its investment in BIG3, the lack of complete and accurate financial information about the league's activities (including information about apparent self-dealing), and the unwillingness of Kwatinetz to allow those retained to professionally manage the league to do their jobs.  *Id*.  Sport Trinity

---

[3] All citations to "Ex.      " are to the exhibits attached to the concurrently filed Declaration of Brian D. Hershman in support of this motion, nearly all of which are subject to the concurrently filed Request for Judicial Notice.

offered an amicable resolution: it made clear to BIG3 that it would not only fulfill the remaining $4 million outlay, but that it was also prepared to substantially increase its contribution, provided BIG3 addressed the foregoing issues and provided complete and accurate books and records. *Id.* These measures were also critical to secure new investors which would be essential for the continued viability of the league. *Id.*

However, rather than address the Investors' concerns, BIG3 submitted a Demand for Arbitration on February 14, 2018 (FAC ¶ 75) and proceeded to launch a media campaign against the Investors and, in a bizarre turn, the entire nation of Qatar, including citizens of Qatar who had no involvement in Sport Trinity or the league.[4]

Moreover, Kwatinetz's erratic behavior in managing the league escalated: (1) he improperly attempted to expel Sport Trinity, the BIG3 league's largest investor; (2) he fired league commissioner, Roger Mason, Jr.; (3) the league's CCO, Kai Henry, resigned due to disagreements with Kwatinetz; and (4) the league's CFO, Rafael Fogel, resigned due to disagreements with Kwatinetz. In firing Mason, Kwatinetz claimed that Mason refused to cooperate with an "independent investigation" conducted by the league and traveled to China without disclosing his trip to BIG3. Ex. C, ¶ 45-47. However, Kwatinetz's justifications were fabricated and calculated to divert attention from his mismanagement of the league. Ex. C ¶ 48. Similarly, both Fogel and Henry resigned as a result of Kwatinetz's mismanagement of the league and erratic behavior. Ex. B, p. 10.

As is most relevant here, on April 5, 2018, BIG3 continued its media campaign by filing a complaint purportedly asserting claims for defamation, defamation per se, trade libel, and intentional interference with contractual relations. The next day, BIG3 filed a First Amended Complaint ("FAC") bringing

---

[4] Ex. D (Vibe reporting that Ice Cube "took things up a notch" after filing a lawsuit against Defendants by taking out a full-page ad in the New York Times and tweeting the ad).

1   the same claims based on the same allegations.[5]  The FAC is generally based on the

2   allegation that Roger Mason allegedly told Jerome Williams (a former NBA

3   basketball player who plays in BIG3 games) that Kai Henry had told him that

4   Kwatinetz referred to BIG3 players as "Rich Nig*as."  FAC ¶ 95, Ex. E.  The FAC

5   later conclusorily contends that the Investors accused Kwatinetz of making this

6   statement and also called Kwatinetz "racist" and "hostile."  FAC ¶ 113.  The FAC

7   contains extremely vague assertions without identifying who specifically made the

8   statements, when the statements were purportedly made, to whom (if anyone) the

9   Investors made these alleged statements, what specifically was purportedly said, or

10  any of the most basic details that are essential to state a viable claim for defamation.

11       BIG3's defamation claims purportedly are brought on behalf of Ice Cube,

12  Kwatinetz and the "Players."  However, Kwatinetz is the only plaintiff even

13  implicated in the alleged statements and the "Players" (whomever that unidentified

14  group might include) are not named parties to the FAC and therefore necessarily

15  cannot assert such a claim.  The trade libel claim similarly lacks the most basic

16  factual detail.  BIG3 claims the Investors are liable for trade libel because they

17  purportedly told "players and third-parties" that "the league was not being managed

18  properly and not accepting their money."  FAC ¶ 116.  The intentional interference

19  with prospective economic relations claim contains even less information.  It

20  simply alleges that the Investors "made or aided and abetted in the making of

21  defamatory statements."  FAC ¶ 122.

22       As discussed below, these allegations are properly subject to the anti-SLAPP

23  statute and BIG3's FAC should be stricken with prejudice.

24  **II.   LEGAL STANDARD**

25       BIG3's claims are the proper subject of an anti-SLAPP motion.  *See*, *e.g.*,

26  *Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal. App. 4th 450, 466

27  _____

[5] About a week after BIG3 filed the FAC, Ice Cube commented to TMZ regarding

28  the lawsuit saying, "'We gon' win.  Stay out of American sports if you don't wanna
    do the right thing.'"  Ex. E.

(2012); *Scott v. Metabolife Int'l, Inc.*, 115 Cal. App. 4th 404, 419 (2004)

("defamation suits are a prime target of SLAPP motions."). In considering an anti-

SLAPP motion, the court conducts a two-step inquiry. *Navellier v. Sletten*, 29 Cal.

4th 82, 88 (2002). "First, the court decides whether the defendant has made a

threshold showing that the challenged cause of action is one arising from protected

activity." *Id*. At this stage, the defendants' burden is not onerous. *Optional*

*Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP*, 18 Cal. App. 5th 95, 112

(2017), review denied (Mar. 14, 2018). In making this threshold showing, a

defendant does not have to show that the statements "are constitutionally protected

under the First Amendment as a matter of law." *Okorie v. Los Angeles Unified Sch.*

*Dist.*, 14 Cal. App. 5th 574, 590 (2017) (internal quotations omitted). In addition, a

defendant is not required to demonstrate "that the plaintiff brought the cause of

action complained of with the intent of chilling the defendant's exercise of speech

or petition rights." *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 58

(2002). Instead, all that must be shown is that the act underlying the plaintiffs'

cause is a protected activity, meaning, that it "'fits one of the categories spelled out

in section 425.16, subdivision (e).'" *Navellier*, 29 Cal. 4th at 88 (quoting *Braun v.*

*Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1043 (1997)).

Once the defendant makes this showing, the burden shifts to the plaintiff and

the court "must then determine whether the plaintiff has demonstrated a probability

of prevailing on the claim." *Navellier*, 29 Cal. 4th at 88. "'To establish such a

probability, a plaintiff must demonstrate that the complaint is both legally sufficient

and supported by a sufficient prima facie showing of facts to sustain a favorable

judgment if the evidence submitted by the plaintiff is credited.'" *Gallagher v.*

*Connell*, 123 Cal. App. 4th 1260, 1265 (2004) (quoting *Matson v. Dvorak*, 40 Cal.

App. 4th 539, 548 (1995)). The plaintiff must meet this burden with admissible

evidence. *Optional Capital*, 18 Cal. App. 5th at 112. If the defendant establishes a

defense or the absence of a necessary element, the anti-SLAPP motion should be

granted.  *Carver v. Bonds*, 135 Cal. App. 4th 328, 344 (2005).

III.   **ARGUMENT**

The Legislature enacted the anti-SLAPP statute "to prevent and deter 'lawsuits … brought primarily to chill the valid exercise of the constitutional rights of freedom of speech….'"  *Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180, 192 (2005) (quoting Cal. Civ. Proc. Code § 425.16(a)).  The anti-SLAPP statute "provide[s] a procedural remedy" for the Court to dispose of lawsuits at a preliminary stage of the proceedings where the allegations lack merit.  *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1055–56 (2006).  Pursuant to this purpose, the anti-SLAPP statute is "'broadly construed'" as "it is in the public interest to encourage participation in matters of public significance, and … participation should not be chilled through abuse of the judicial process."  *Flatley v. Mauro*, 39 Cal. 4th 299, 312 (2006) (quoting Cal. Civ. Proc. Code § 425.16(a)).

Here, to the extent the allegations in BIG3's FAC implicate the Investors *at all*, it seeks to chill "participation in matters of public significance," which is exactly what the anti-SLAPP statute was enacted to prevent.  In fact, it is evident that this lawsuit is really part of a calculated smear campaign launched by BIG3 against its Investors (likely in order to eliminate their equity interest in BIG3).  Indeed, the majority of the FAC focuses on allegations *completely unrelated* to BIG3's causes of action for defamation, trade libel, and intentional interference with contractual relations.  For example, the FAC preaches against business dealings with the nation of Qatar, claiming that Qatar Investments' "interactions with the BIG3 … is a cautionary tale for others looking to do business with Qatar," that "it became apparent that Defendants were focused on improving the image of Qatar in light of the blockade….," and that "Defendant Al-Rumaihi and Defendant Sabi continued to make excuses why they couldn't pay."  FAC ¶¶ 25, 40, 49.  The FAC also copies and pastes entire text messages unrelated to the alleged defamation, including exchanges about Las Vegas trips, celebrity parties and

funerals.  FAC ¶¶ 48-70. Once one strips through the utterly false, salacious and irrelevant allegations in the FAC, what comprises the basis for BIG3's actual causes of action are protected activities, and BIG3 cannot demonstrate a probability of prevailing on their claims.  Thus, the Court should grant the Investors' anti-SLAPP motion.

## A.   BIG3's Claims Arise From Allegations That Are Protected Activities Under The Anti-Slapp Statute.

A lawsuit arises from protected activities and is therefore subject to an anti-SLAPP motion where the allegations underpinning the plaintiff's claims fits within one of the categories spelled out in subdivision (e) of the anti-SLAPP statute. *Braun v. Chronicle Publ'g Co*., 52 Cal. App. 4th 1036, 1044 (1997).  Subdivision (e) lists, among others, the following acts as constituting protected activities: (1) statements made in a public forum in connection with an issue of public interest; and (2) statements made in furtherance of the constitutional right to free speech in connection with an issue of public interest.  Cal. Civ. Proc. Code § 425.16(e). "Beyond [the public interest] requirement … these categories are quite broad, applying by their terms to any statements made in a place open to the public or in a public forum, or any conduct engaged in, in furtherance of the rights of petition or free speech." *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 893 (2004).  BIG3's allegations satisfy both of these prongs and therefore constitute protected activity under the anti-SLAPP statute.

## 1.   The Alleged Statements Forming The Basis Of BIG3's Claims Were Made In A Public Forum.

"A 'public forum' is traditionally defined as a place that is open to the public where information is freely exchanged." *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 475 (2000).  However, "a public forum is not limited to a physical setting, but also includes other forms of public communication." *Id*. at 476; *see Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 (2006) ("Websites accessible to

- 7 -

1  the public … are 'public forums' for purposes of the anti-SLAPP statute."); *Ampex*

2  *Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1576 (2005) (concluding that messages

3  posted on a Yahoo! message board were made in a public forum); *Nygard, Inc. v.*

4  *Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1038 (2008) (holding that pursuant to the

5  fundamental purpose of the anti-SLAPP statute requiring a "broad reading of

6  'public forum,'" newspapers and magazines fall within the definition of public

7  forum).

8       Even if statements are not made in a public forum, the anti-SLAPP statute

9  encompasses statements made in private conversations so long as they concern an

10 issue of public interest.  *See Wilbanks*, 121 Cal. App. 4th at 897 ("Section

11 425.16 … governs even private communications, so long as they concern a public

12 issue."); *Averill v. Superior Court*, 42 Cal. App. 4th 1170, 1176 (1996) (concluding

13 that an employee's allegedly defamatory statements made in private to her

14 employer fell within the scope of the anti-SLAPP statute because the Legislature

15 did not intend to exclude private conversations from protection under the statute);

16 *see also* Cal. Civ. Proc. Code § 425.16 (e)(4) ("any other conduct in furtherance of

17 the exercise of the … constitutional right of free speech in connection with … an

18 issue of public interest" is a protected activity).

19      Here, BIG3's FAC alleges that the statements attributing racially

20 inflammatory remarks to Kwatinetz, and which form the basis of BIG3's

21 defamation, defamation per se, and intentional interference with prospective

22 economic relations claims, were made in a press release and to other individuals.

23 FAC ¶¶ 105, 109, 114, 122.  According to the FAC, the press release was "widely

24 distributed."  FAC ¶ 88 ("former Commissioner and President repeated the

25 allegation in a widely distributed press release").  Because the press release was, by

26 its very nature, "released" to the public *and* "widely distributed," there is no

27 question that the alleged statements were made in a public forum.  In fact, the FAC

28 expressly alleges that these statements were made as part of "public relations

efforts" indicating that these statements were made available to the broad public in a public forum.  FAC ¶¶ 107, 111.[6]

Similarly, BIG3's trade libel claim rests on the allegation that the Investors "told players and third-parties that the league was not being managed properly and not accepting their money."  FAC ¶ 116.  Setting aside whether such a statement is actionable under trade libel law (it is not, *see infra* B(2)), for purposes of the anti-SLAPP statute, by necessary implication the alleged statements must have been made in a sufficiently public forum to have allegedly disparaged BIG3.

### 2.    The Alleged Statements Forming The Basis Of BIG3's Claims Concern An Issue Of Public Interest.

The anti-SLAPP statute's application to "statements made in public fora and 'other conduct' implicating speech or petition rights, include an express 'issue of public interest' limitation."  *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1117 (1999).  "'[A]n issue of public interest' within the meaning of [the anti-SLAPP statute] is ***any issue in which the public is interested***.  In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute—it is enough that it is one in which the public takes an interest."  *Nygard*, 159 Cal. App. 4th at 1042 (emphasis in original).

Generally, "'[a] public issue is implicated if the subject of the statement or activity underlying the claim (1) was a person or entity in the public eye; (2) could affect large numbers of people beyond the direct participants; or (3) involved a topic of widespread, public interest.'"  *D.C. v. R.R.*, 182 Cal. App. 4th 1190, 1215 (2010) (quoting *Jewett v. Capital One Bank*, 113 Cal. App. 4th 805, 814 (2003)).

---

[6] Even if the "widely distributed" press release was not part of an alleged "public relations effort[]," and therefore not made in a public forum, the anti-SLAPP statute is broad enough to cover such statements made in more private settings.  *See Wilbanks*, 121 Cal. App. 4th at 897 ("Section 425.16 … governs even private communications, so long as they concern a public issue."); *Averill*, 42 Cal. App. 4th at 1176 (1996) (concluding that an employee's allegedly defamatory statements made in private to her employer fell within the scope of the anti-SLAPP statute because the Legislature did not intend to exclude private conversations from protection under the statute).

Statements regarding individuals in the public eye concern the public interest where the public is interested in the content of the statements. *See Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1254 (2017) ("as Jackson concedes, [ ] she and Mayweather are both high profile individuals … subject to extensive media scrutiny.  As such, Mayweather's postings and comments concerning his relationship with Jackson, as well as Jackson's pregnancy, its termination and her cosmetic surgery, were 'celebrity gossip' . . . Mayweather . . . is someone whose professional accomplishments and private life have generated widespread public interest" and thus, the statements were within the public interest under the anti-SLAPP statute); *Hall v. Time Warner, Inc*., 153 Cal. App. 4th 1337, 1347 (2007) (concluding that an interview with Brando's housekeeper, Hall, involved an issue of public interest under the anti-SLAPP statute because "[t]he public's fascination with Brando and widespread public interest in his personal life made Brando's decisions concerning the distribution of his assets a public issue or an issue of public interest.").

Here, the alleged statements forming the basis of BIG3's claims concern an issue of public interest because the BIG3 basketball league, Ice Cube *and* Kwatinetz are all in the public eye and, as demonstrated by the media and press attention, the public is interested in the content of the statements.

### (a) BIG3, Ice Cube And Kwatinetz Are All In The Public Eye.

There can be little dispute that the BIG3 basketball league, Ice Cube and Kwatinetz are in the public eye, even if to varying degrees.  Because Ice Cube and Kwatinetz *co-founded* the BIG3 basketball league, it makes sense to consider their presence in the public eye first.

Ice Cube is a well-known rapper, actor and businessman.[7]  Ice Cube has

---

[7] *See* Ex. F (IMDb explaining that Ice Cube has produced, written, toured, and recorded with various music groups and starred in a number of movies).

more than *12 million* followers on Facebook and 4.68 million followers on Twitter.[8]
The movie Straight Outta Compton was a "runaway sensation" that tells the story
of Ice Cube's beginnings in the rap industry; it grossed more than $200 million in
worldwide revenue.[9]  Ice Cube even has his own website with a news section to
provide updates on his public appearances.[10]  Most recently he has appeared on
several popular television talk shows, including James Corden,[11] ESPN's
SportNation,[12] and The Ellen DeGeneres Show.[13]  He also has recently spoken with
The Washington Post[14] and other popular media outlets.[15]  There is no question that
Ice Cube is in the public eye.

Albeit to a lesser degree and for different reasons, Kwatinetz is also in the
public eye.  Kwatinetz is an entertainment industry executive that has founded and
managed various media, talent and production companies, including one with Ice
Cube (CubeVision).[16]  Variety wrote an article on his $10 million New York City
apartment and noted that some of "Mister Kwatinetz['s] … more recent producer
credits include the 'notoriously wretched,' short-lived TV series 'Notorious.'"[17]
There is a list of "Famous Friends of Jeff Kwatinetz" with over two thousand
views.[18]  Kwatinetz also *puts* himself into the public eye:  (1) he went on the record
with The Hollywood Reporter to defend Steve Bannon explaining that Bannon is "a

---

[8] Ex. G (Ice Cube Facebook and Twitter).

[9] Ex. H (Deadline article); Ex. I (Variety reporting that "Straight Outta Compton"
"reached $200 million at the worldwide box office").

[10] Ex. J (icecube.com).

[11] Ex. K (billboard.com).

[12] Ex. L (ESPN.com).

[13] Ex. M (ET Canada article).

[14] Ex. N (Washington Post noting that Ice Cube hopes that Kobe Bryant will join
the BIG3 league).

[15] Ex. O (ESPN.com); Ex. P (billboard.com).

[16] Ex. Q (IMDb biography of Kwatinetz).

[17] Ex. R (Variety).

[18] Ex. S (Ranker listing famous friends of Kwatinetz).

great person who wants the world to be a better place";[19] and (2) he recently had an interview with brandchannel about BIG3 noting that "[a] benefit of having a lot of big-name great players involved is you get attention."[20]  Over the years, the media has documented Kwatinetz's business dealings and his alleged mismanagement, erratic behavior, and drug use.[21]  Put simply, Kwatinetz is in the public eye.

Lastly, with both founding members in the public eye, it is not hard to see how the nationally broadcasted BIG3 basketball league is in the public eye too. Indeed, the league regularly issues press releases with updates[22] and has a Twitter account with over 100,000 followers.[23]  There is media and press coverage following each step of the BIG3 league—from its development and debut games, to player salaries[24] and commissioner changes,[25] to the 2018 player draft.[26]  The BIG3 basketball league is in the public eye.

### (b)   The Public Is Interested In The Content Of The Statements.

BIG3's claims are based on alleged statements attributing racially inflammatory remarks to Kwatinetz—*i.e.*, that he allegedly was "'racist,' 'hostile,' and that Kwatinetz used the term 'Rich Nig*as.'"  FAC ¶ 105, 109.  The numerous

---

[19] Ex. T (The Hollywood Reporter).

[20] Ex. U (brandchannel interview with Kwatinetz).

[21] Ex. V (New York Times noting the number of senior executives departing Kwatientz's talent management company, the Firm); Ex. W (Los Angeles Times reporting that Prospect Park Networks, the production company headed by Kwatinetz, filed for bankruptcy); Ex. X (Variety detailing the collapse of a proposed merger involving The Firm as a result of Kwatinetz's reportedly erratic behavior); Ex. Y(Washington Post stating that Kwatinetz allegedly mismanaged the Firm and used drugs); Ex. Z (Vanity Fair); Ex. AA (New York Daily News); Ex. BB (Variety reporting that "Kwatinetz is known in some gossip glossy reading circles as actress Brittany Murphy's ex-lover and fiancé.  In other circles, among celebrity king makers and film producers … [he] is the sometimes controversial co-founder and former CEO of The Firm, a talent management that once claimed clients like Marty Scorsese, Leonardo DiCaprio….").

[22] Ex. CC (big3.com).

[23] Ex. DD (BIG3 (@thebig3) Twitter).

[24] Ex. EE (Forbes).

[25] Ex. FF (Washington Post); Ex. GG (New York Times).

[26] Ex. HH (USA Today); Ex. II (CBSSports.com).

articles published about the content of these statements necessarily demonstrate the public interest in them:

1. "Hours after Mason's dismissal over alleged corrupt behavior became public, the former NBA player released a statement claiming the BIG3 exposed him and others to a 'hostile and racist' work culture, which he said included co-founder Jeff Kwatinetz calling black players 'rich n—ers.'" Ex. JJ;

2. "Mason got the ax from BIG3 on Monday for refusing to cooperate with a lawsuit against two Qatari investors who allegedly screwed the league out of millions of dollars … 'The work environment at BIG3 has been hostile and racist resulting in the departure of valuable League personnel. Among other matters, a former employee of BIG3 recently told me that Kwatinetz has repeatedly referred to black athletes as 'rich n**gers.'" Ex. KK;

3. "Mason added that 'a former employee of BIG3' recently told him that Kwatinetz, an entertainment industry executive, 'has repeatedly referred to black athletes as 'rich (expletive).'" Ex. LL.

Even more broadly, the racial attitudes of leaders of professional sports leagues, including the NFL,[27] MLB,[28] and NBA,[29] are matters of public interest. Thus, statements attributing racially inflammatory remarks to Kwatinetz, the co-CEO of BIG3 basketball league, are matters of public interest.

The same is true for BIG3's trade libel allegations that the Investors "told

---

[27] Ex. NN (New York Post); Ex. OO (USA Today reporting that "[f]acing a growing investigation that accuses him of sexual misconduct and using racist language at work, Carolina Panthers owner Jerry Richardson announced [ ] that he will sell the NFL Team").

[28] Ex. PP (Sports Illustrated).

[29] Ex. QQ (Star-Telegram); Ex. RR (The Guardian stating that Donald Sterling, owner of the LA Clippers, made racist remarks).

players and third-parties that the league was not being managed properly."  FAC ¶ 116.  The BIG3 basketball league's internal management has also been the subject of media and press coverage:

1. "Unless the league changes the length of the games or the number of games played a night, the way the league is televised presents a problem for building interest."  Ex. MM;

2. "The 3-on-3 basketball league has struggled in its infancy, seeing ratings plummet after a solid opening weekend in Brooklyn, and injuries to some of its marquee players…."  Ex. SS;

3. "[T]he league and Fox Sports announced Wednesday an agreement to extend the 3-on-3 basketball league and its coverage into another season," Ex. TT;

4. "'When certain players expressed their desire to participate in the CBL games, Mr. Cube confronted the players personally about playing in the CBL and threatened the players that they would be fined' … Following a successful debut … the league has struggled to maintain a strong audience."  Ex. UU.

Furthermore, the public has demonstrated an interest in the mismanagement of professional sports leagues generally, including mismanagement in the NFL, NHL, NBA, and MLB.[30]   Media outlets such as ESPN, Fox Sports, Sports Illustrated, and CBS Sports follow professional sports leagues and constantly publish stories about them.[31]  The public's copious consumption of this information demonstrates its interest in the topic.  Based on the foregoing, BIG3's allegations underpinning its FAC constitute protected activity under subdivision (e) of the anti-

---

[30] *See* Ex. VV (blackandteal.com); Ex. WW (Bleacher Report); Ex. XX (FANRAG Sports Network); Ex. YY (Washington Post); Ex. ZZ (clevelandcavaliers.com); Ex. AAA (CBS); Ex. BBB (The Wall Street Journal); Ex. CCC (Rolling Stone).

[31] *See, e.g.*, Ex. DDD (ESPN); Ex. EEE (Fox Sports); Ex. FFF (Sports Illustrated); Ex. GGG (CBSSports.com).

- 14 -

SLAPP statute.

**B.    BIG3 Cannot Demonstrate A Probability Of Prevailing On The Merits Of Its Claims.**

Because BIG3's allegations constitute protected activity under the anti SLAPP statute, BIG3's FAC must be stricken unless BIG3 can "establish[] that there is a probability that [they] will prevail" by producing "admissible evidence" in support of the claims.  *Okorie*, 14 Cal. App. 5th at 590; Cal. Civ. Proc. Code § 425.16(b)(1).  BIG3 cannot meet this burden.

**1.    BIG3 Cannot Prevail On Its Defamation Or Defamation Per Se Claims.**

The tort of defamation "involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage."  *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (internal citations omitted).  "Further, when the plaintiff is a public figure, he or she must also show the speaker made the objectionable statements with malice in its constitutional sense that is, with knowledge that it was false or with reckless disregard of whether it was false or not."  *Nygard*, 159 Cal. App. 4th at 1048.

BIG3's claims for defamation and defamation per se are founded on alleged statements attributing racially inflammatory remarks to Kwatinetz—*i.e.*, that he allegedly was "'racist,' 'hostile,' and that Kwatinetz used the term 'Rich Nig*as.'" FAC ¶ 105, 109.  BIG3, however, cannot demonstrate that those alleged statements (1) were published by the Investors, (2) were made about *each* of the plaintiffs asserting those claims (*e.g.*, Ice Cube, Kwatinetz and "Players"—the latter of which is not an identified "plaintiff" anywhere in the FAC), (3) are false statements of fact, or (4) were made with malice.  Thus, BIG3 has no probability of prevailing on their claims.

**(a)    BIG3 Cannot Demonstrate That The Statements Were Published By The Investors.**

A defamation against a defendant requires a showing that the defamatory

- 15 -

statements were "published"—*i.e.*, communicated to a third party who understood the defamatory meaning and application to the plaintiffs—*by the defendant*. *Martinelli v. Int'l House USA*, 161 Cal. App. 4th 1332, 1337 (2008).  Thus, courts have held that a "general allegation" that "'all of the co-conspirators . . . made false statements'" lacked the specificity required by *Twombly/Iqbal* because it did not identify who made the statements and when.  *Gressett v. Contra Costa Cty*., No. C-12-3798 EMC, 2013 WL 2156278, at *30 (N.D. Cal. May 17, 2013); *PAI Corp. v. Integrated Sci. Sols., Inc*., No. C-06-5349 JSW(JCS), 2007 WL 1229329, at *9 (N.D. Cal. Apr. 25, 2007) (dismissing a defamation claim because the plaintiff "failed to specifically identify who made the statements, when they were made and to whom they were made."); *Havens v. Autozoners, LLC*, No. 2:16-CV-02503-KJM-GGH, 2017 WL 2546816, at *3-4 (E.D. Cal. June 13, 2017) (dismissing plaintiff's defamation claim because the "court need not construe conclusory allegations as true" and "[t]he complaint [ ] does not make clear how … the allegedly defamatory statement was 'published' or disseminated to third parties").[32]

Here, the FAC makes vague allegations that "Defendants" made alleged statements about Kwatinetz but fails to identify which defendant made which specific statements or how those statements were communicated to any third party by that defendant.  FAC ¶ 107, 111, 117.  The FAC also alleges vaguely that "Defendants" published the alleged statements "through a press release and defamatory public relations efforts" but, *according to the FAC*, Roger Mason (a non-party and former BIG3 commissioner) issued the press release.  FAC ¶ 90.

---

[32] *See also Williams v. Salvation Army*, No. 2:14-CV-06138-ODW, 2015 WL 685356, at *5 (C.D. Cal. Feb. 18, 2015) (concluding plaintiff failed to plead publication because although "Plaintiff asserts with conviction that Marshall's statements were repeated and reviewed by other employees, she provides no specific instance where this actually occurred"); *Flores v. Von Kleist*, 739 F. Supp. 2d 1236, 1259 (E.D. Cal. 2010) (concluding plaintiff's evidence that third party told the plaintiff that someone told him about a defamatory statement made by another individual, was inadmissible hearsay that could not prove a defamation claim); *Ryll v. Merck & Co.*, 111 F. App'x 535, 536 (9th Cir. 2004) (holding a "second-hand account of the alleged defamatory statement is inadmissible hearsay").

BIG3 simply has no evidence that the Investors communicated the alleged statements about Kwatinetz to any third-party.

> **(b)** **BIG3 Cannot Demonstrate That The Statements Were Made About *Each* Of The Plaintiffs Asserting The Defamation Claims.**

To prevail on a defamation claim, a plaintiff must demonstrate that the statement was "of and concerning" *the plaintiff. Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042 (1986). The purpose of this requirement is to prevent "'vexatious lawsuits [that could] seriously interfere with public discussion of issues, or groups, which are in the public eye.'" *Id*. at 1044 (quoting *Michigan United Conservation Clubs v. CBS News*, 485 F. Supp. 893, 900 (W.D. Mich. 1980)).

Here, the FAC brings claims for defamation and defamation per se on behalf of Ice Cube, Jeff Kwatinetz and "Players." The undefined "Players" are not an identified plaintiff anywhere in the FAC. This fact alone precludes "Players" from asserting defamation claims under the FAC against anyone arising from any facts. And although Ice Cube is a named plaintiff in the FAC, there is not a single allegation that concerns him, much less directly implicates him. Thus, Ice Cube has no basis on which to assert defamation claims under the FAC either.

The only allegations "concerning" any named plaintiff are alleged statements attributing racially inflammatory remarks to Kwatinetz—*i.e.*, that he allegedly was "'racist,' 'hostile,' and that Plaintiff Kwatinetz used the term 'Rich Nig*as.'" FAC ¶ 107, 111. But given that there is no allegation, much less evidence, that the Investors themselves made these statements (*see supra* B(1)(a)), BIG3 has failed to demonstrate that allegedly defamatory statements made *by the Investors* "concerned" Kwatinetz.

> **(c)** **BIG3 Cannot Demonstrate That The Statements Are False Statements Of Fact.**

"[T]o state a defamation claim that survives a First Amendment challenge,

plaintiff must present evidence of a statement of fact that is provably false." *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 809 (2002) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)). "Statements do not imply a provably false factual assertion and thus cannot form the basis of a defamation action if they cannot 'reasonably [be] interpreted as stating actual facts' about an individual.'" *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401 (1999) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)). "[C]ourts distinguish between statements of fact and statements of opinion for purposes of defamation liability." *ZL Techs., Inc. v. Does 1-7*, 13 Cal. App. 5th 603, 624 (2017) (internal quotations omitted). "In drawing the distinction between opinion and fact, California courts apply the totality of the circumstances test to determine whether an allegedly defamatory statement is actionable." *Ferlauto*, 74 Cal. App. 4th at 1401.

Generally, statements that an individual is "racist" are not actionable: "The term 'racist' is of course an exceptionally negative, insulting, and highly charged word … It is, however, also a word that lacks precise meaning, so its application to a particular situation or individual is problematic; indeed, defendants contend no court has ever found the use of the term 'racist' to be actionable defamation in a context similar to this one." *Overhill Farms, Inc. v. Lopez*, 190 Cal. App. 4th 1248, 1261-62 (2010); *see also Forte v. Jones*, No. 1:11-CV-0718 AWI BAM, 2013 WL 1164929, at *7 (E.D. Cal. Mar. 20, 2013) ("the implication is to the effect that Plaintiff and the others confronting Defendant are racists … that sort of name-calling is not actionable, no matter how subjectively hurtful it may be, because the statement is not of the sort that can be verified as false.").

That is precisely what the FAC asserts here. The FAC asserts that the allegedly defamatory statements comprised statements that Kwatinetz was "'racist,' [and] 'hostile.'" FAC ¶ 105, 109. As held in *Overhill Farms* and *Forte*, general statements that plaintiffs are "racist" and "hostile" are not statements of fact that are provably false, and therefore are not actionable. Accordingly, BIG3 cannot

- 18 -

1    demonstrate a probability of success based on those allegations.

2        The FAC further asserts that the allegedly defamatory statements included

3    attributing to Kwatinetz use of the term "Rich Nig*as."  The only evidence offered

4    by BIG3 that the *Investors* purportedly attributed such statements to Kwatinetz is a

5    declaration from Jerome Williams generically "confirming the defamatory

6    statements made to him by Defendants."  FAC ¶ 95, Ex. D.  However, the

7    declaration from Jerome Williams fails to contain *any* information regarding the

8    alleged "Rich Nig*as" remark.[33]  The declaration only states that one of the

9    Investors (Sabi) told Roger Mason that it was a lead investor in BIG3 and had also

10   told Mason that "the BIG3 weren't running the business right."  FAC, Ex. D.

11   Neither of those statements are actionable.  The Investors are, in fact, the lead

12   investors in BIG3, but regardless such a statement is not defamatory.  Moreover, as

13   discussed above, Sabi's purported statements to Jerome Williams about the BIG3

14   not being run "right" is a non-actionable opinion and cannot be the basis for

15   Kwatinetz's defamation claim.  *See Summit Bank v. Rogers*, 206 Cal. App. 4th 669,

16   700 (2012) (concluding that statements regarding the mismanagement of bank were

17   non-actionable opinions).  BIG3 cannot demonstrate a probability of success based

18   on those allegations.

         **(d)    Kwatinetz—The Only Relevant Plaintiff—Is A Public**
19              **Figure And Therefore Must Show The Allegedly**
20              **Defamatory Statements Were Made With Actual**
                **Malice.**
21

22       A threshold question in a defamation action is whether the plaintiff is a

23   "public figure."  *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 113 (2007);

24   *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 888 (9th Cir. 2016) ("The

25   threshold question that frames our defamation analysis is … [w]hether an

26   individual is a public figure").  If so, the public figure must prove that the allegedly

27   [33] Notably, Jerome Williams submitted a second declaration that does concern the
     "Rich Nig*as" remark, but that declaration makes *no mention of the Investors*;
28   rather, he attributes those hearsay remarks only to Mason and Henry.  FAC, Ex. E.

- 19 -

"defamatory statements were made with actual malice." *Comedy III Prods., Inc. v. Gary Saderup, Inc*., 25 Cal. 4th 387, 398 (2001) (citing *Gertzv. Robert Welch, Inc.*, 418 U.S. 323, 328 (1974)).

The United States Supreme Court has articulated two types of public figures for defamation purposes:  (1) an "all-purpose" public figure is an individual who has "achieve[ed] such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts"; and (2) a "limited purpose public figure" is an individual who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 351 (1974).  Public figures "include artists, athletes, business people, dilettantes, anyone who is famous or infamous because of who he is or what he has done." *Cepeda v. Cowles Magazines & Broad., Inc.*, 392 F.2d 417, 419 (9th Cir. 1968).

For all the reasons discussed above as to how Kwatinetz is in the public eye and the public takes an interest in his business ventures and related activities, Kwatinetz is a public figure for purposes of defamation law.  *See* Section B(2)(a).  At the very least, Kwatinetz is a limited public figure because of his media campaign related to the BIG3 basketball league, Qatar and the Investors and the corresponding articles published on the alleged statements and this dispute.  *See supra* Section B(2)(b).

Actual malice "requires a showing that the allegedly false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'"  *Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1167 (2004) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)).  "'There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'"  *Id*. (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).  "The existence of actual malice turns on the defendant's subjective belief as to the truthfulness of the allegedly false

statement." *Id*.  "[M]ere failure to investigate the truthfulness of a statement, even when a reasonably prudent person would have done so, is insufficient." *Id*. at 1169.

In opposition to an anti-SLAPP motion, the plaintiff must "'establish a probability that [he] will be able to produce clear and convincing evidence of actual malice.'"  *Reed v. Gallagher*, 248 Cal. App. 4th 841, 862 (2016) (quoting *Annette F.*, 119 Cal. App. 4th at 1167).  In other words, the plaintiff "must make a prima facie showing of facts demonstrating a high probability that [the defendant] published the challenged statements with knowledge of their falsity or while entertaining serious doubts as to their truth." *Id*.

As discussed above, the FAC fails to establish (or even allege) that the Investors published *any* allegedly defamatory statements about *any* of the plaintiffs, much less that the Investors may have done so with actual malice—that is, "with knowledge of their falsity or while entertaining serious doubts as to their truth." The most the FAC alleges is that one of the Investors "intended for the false allegations to do maximum damage and create a leadership vacuum in the league." FAC ¶ 96.  But the logical disconnect in this vague assertion is transparent, as it says nothing about knowledge of *falsity* of the alleged statements.  The FAC otherwise fails to allege any detail about what *the Investors* actually did—*i.e.*, what was  purportedly said (*i.e.*, by whom, about whom, when and to whom), let alone that such statements were false.  *See supra* B(1)(c).  It is impossible to say an act has been undertaken with actual malice if the nature of the act cannot even be identified.

### 2.    BIG3 Cannot Prevail On Its Trade Libel Claim.

"Trade libel is the publication of matter disparaging the quality of another's property, which the publisher should recognize is likely to cause pecuniary loss to the owner." *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1010 (2001); *Mann v. Quality Old Time Serv., Inc*., 139 Cal. App. 4th 328, 340 (2006) ("trade libel involves false disparagement of the quality of goods or services.").  Whereas

defamation "'concerns injury to the reputation of a person or business,'" trade libel "'involves false disparagement of the quality of goods or services.'" *Total Call Int'l, Inc. v. Peerless Ins. Co.*, 181 Cal. App. 4th 161, 169 (2010) (quoting *Mann*, 139 Cal. App. 4th at 340). "To constitute trade libel, a statement must be false." *ComputerXpress, Inc.*, 93 Cal. App. 4th at 1010. "[O]pinions will not support a cause of action for trade libel." *Id.*; *see Summit Bank*, 206 Cal. App. 4th at 700 ("statements that the Bank was mismanaged and rendered poor service and that … depositors would be well advised to move their accounts … do not imply a provably false factual assertion … Instead, as a matter of law, such statements constitute nonactionable opinions.").

BIG3's trade libel claim is based on the allegation that the Investors "told players and third-parties that the league was not being managed properly and not accepting their money." FAC ¶ 116. As an initial matter, statements regarding management of the league and whether the league accepted the Investors' money do not concern the "quality of goods or services" of BIG3, and therefore simply are not actionable under trade libel law. *See Total Call*, 181 Cal. App. 4th at 169. Moreover, whether BIG3 was being "managed properly" is an opinion that does not imply a provably false assertion. *See Summit Bank*, 206 Cal. App. 4th at 700. With respect to the allegation that the league was "not accepting their money," BIG3 provides no context to this statement, fails to identify who made the statement or who it was said to, nor does BIG3 provide any explanation as to how such a statement might have caused a pecuniary loss to BIG3. Put simply, BIG3 cannot demonstrate a probability of prevailing on the merits of its trade libel claim.

### 3. BIG3 Cannot Prevail On Its Intentional Interference with Prospective Economic Relations Claim.

To prove a claim for intentional interference with prospective economic relations, a plaintiff must show: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the

plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal. App. 4th 464, 475 (1996) (internal quotations omitted). "'[A] plaintiff seeking to recover for an alleged interference with prospective contractual or economic relations must plead and prove as part of its case-in-chief that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself.'" *Id.* (quoting *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 381–393 (1995)).

BIG3's intentional interference claim rests on the anemic allegation that "Defendants made or aided and abetted in the making of defamatory statements of and concerning Plaintiffs with the intent of interfering and causing disruption with existing and prospective contracts entered by Plaintiffs." FAC ¶ 122. The FAC does not identify *any* specific economic relationship between BIG3 and some third party, much less one with the probability of future economic benefit to BIG3. The FAC also fails to establish the Investors' knowledge of that relationship, any intentional acts by the Investors designed to disrupt that relationship, any actual disruption of that relationship, or any economic harm to BIG3 that was caused by the Investors' actions. Moreover, for the reasons discussed above, the connection between the Investors and any alleged defamatory statements is wholly lacking. In other words, the FAC fails to allege *any* of the elements of an intentional interference claim. Necessarily, then, BIG3 cannot demonstrate a probability of prevailing on the merits of this claim.

**IV.   THE COURT SHOULD AWARD THE INVESTORS THEIR ATTORNEYS' FEES AND COSTS INCURRED IN BRINGING THIS MOTION**

California's anti-SLAPP statute provides that "a prevailing Defendant on a

1  special motion to strike shall be entitled to recover his or her attorney's fees and

2  costs." Cal. Code Civ. Proc. § 425.16(c). Indeed, "it is well-settled that an award

3  of attorney's fees and costs to a successful anti-SLAPP movant is mandatory."

4  *Kearney v. Foley and Lardner*, 553 F. Supp. 2d 1178, 1181-1182 (S.D. Cal. 2008);

5  see also *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001) ("[A]ny SLAPP

6  defendant who brings a successful motion to strike is entitled to mandatory attorney

7  fees"). Because the allegations giving rise to the FAC involve protected activity

8  and BIG3 has failed to carry its burden of establishing a probability of prevailing on

9  the merits of its claims, BIG3 should be ordered to pay all attorneys' fees and costs

10  incurred by the Investors in bringing this motion.

11  **V.    CONCLUSION**

12      For the foregoing reasons, the Investors' anti-SLAPP motion should be

13  granted and BIG3's FAC should be stricken with prejudice.

14

15  Dated: May 4, 2018            Respectfully submitted,

16                                    JONES DAY

17

18                                  By: */s/ Brian D. Hershman*
                                      Brian D. Hershman

19                                  Attorneys for Defendants

20                                  AHMED AL-RUMAIHI and AYMAN
                                SABI

21

22

23

24

25

26

27

28