UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-3466-DMG (SKx)** | Date | November 29, 2018 |
|---|---|---|---|

| Title | *Big3 LLC, et al. v. Ahmed Al-Rumaihi, et al.* | Page | 1 of 13 |
|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:   IN CHAMBERS—ORDER RE PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY [10], DEFENDANTS' MOTION TO STRIKE FIRST AMENDED COMPLAINT [8], AND PLAINTIFFS' MOTION TO LIFT DISCOVERY STAY [19]**

## I.
## PROCEDURAL BACKGROUND

On April 6, 2018, Plaintiffs Big3 Basketball, LLC ("Big3");[1] O'Shea Jackson (aka "Ice Cube"); and Jeff Kwatinetz filed a First Amended Complaint ("FAC") in Los Angeles County Superior Court against Defendants Ahmed Al-Rumaihi, Faisal Al-Hamadi, Ayman Sabi, Sheikh Abdullah bin Mohammed bin Sau Al Thani, and Akbar Al Baker. [Doc. # 1 at 72–122.][2] The FAC raises four state-law causes of action:  (1) defamation, brought on behalf of Jackson and Kwatinetz against all Defendants; (2) defamation *per se*, brought on behalf of Jackson and Kwatinetz against all Defendants; (3) trade libel, brought on behalf of Big3 against all Defendants; and (4) intentional interference with prospective economic relations, brought on behalf of all Plaintiffs against all Defendants.[3]  *See id.* at 100–03.  On April 25, 2018, Defendants Al-Rumaihi and Sabi (the "Moving Defendants") removed the case, invoking this Court's diversity jurisdiction under 28 U.S.C. section 1332(a).  Removal Notice at 1–11 [Doc. # 1].

---

[1] Certain portions of the FAC mistakenly refer to this Plaintiff as "Big3 LLC."  *See, e.g.*, FAC at ¶ 1 [Doc. # 1].  Nonetheless, the first page of the FAC clarifies that this Plaintiff is named "Big3 Basketball, LLC," and that Plaintiffs' counsel represents that entity.  *See id.* at 72.

[2] All page references herein are to page numbers inserted by the CM/ECF system.

[3] The FAC purports to assert the first and second causes of action on behalf of Jackson, Kwatinetz, and "Players[,]" which appears to be a reference to the basketball players employed by Big3.  *See* FAC at 100–01.  Yet, the "Players" are not named as parties to this action, and Plaintiffs' counsel does not appear on their behalf.  *See id.* at 72.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-3466-DMG (SKx) | | Date | November 29, 2018 |
| --- | --- | --- | --- | --- |

| Title | *Big3 LLC, et al. v. Ahmed Al-Rumaihi, et al.* | | Page | 2 of 13 |
| --- | --- | --- | --- | --- |

On May 4, 2018, the Moving Defendants filed a Motion to Strike the FAC pursuant to California's Anti-SLAPP statute ("Anti-SLAPP Motion"). [Doc. # 8.] On May 7, 2018, Plaintiffs filed a Motion for Leave to Conduct Jurisdictional Discovery ("MJD"). [Doc. # 10.] On May 18, 2018, Plaintiffs filed a Motion to Lift Discovery Stay ("MLDS"). [Doc. # 19.] All three motions have since been fully briefed. [Doc. ## 23, 24, 25, 27, 28, 29.] Having duly considered the parties' written submissions, the Court **DENIES** Plaintiffs' MJD, **GRANTS IN PART** and **DENIES IN PART** the Moving Defendants' Anti-SLAPP Motion with leave to amend, and **DENIES** Plaintiffs' MLDS.

**II.**
**REQUEST FOR JUDICIAL NOTICE**

Federal Rule of Evidence 201 permits a court to take judicial notice of facts not subject to reasonable dispute and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Moving Defendants request judicial notice of, *inter alia*, certain news articles reporting on the parties and/or matters relating to the instant dispute. [Doc. ## 9, 30.] The Court takes judicial notice of the fact that the articles found in Exhibits D, E, U, JJ, KK, LL, MM, SS, and TT to Brian Hershman's Declaration [Doc. ## 8-2, 8-3] were in the public realm, but the Court does not judicially notice the truth of the contents of those publications. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles are in fact true.'" (quoting *Premier Growth Fund v. All. Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006))). The Court **DENIES** as **moot** the remainder of the Moving Defendants' request because the Court need not rely upon these other documents to resolve the Anti-SLAPP Motion.

**III.**
**FACTUAL BACKGROUND**[4]

Big3 is "a three-on-three professional basketball league" and a Delaware limited liability company that has its principal place of business in Los Angeles. *See* FAC at ¶¶ 1, 7. Jackson and Kwatinetz are the founders of Big3. *See id.* at 72, 77. In July 2017, Defendants formed a Delaware limited liability company called Sport Trinity LLC ("Sport Trinity"). *See id.* at ¶ 41. On or around July 14, 2017, Sport Trinity and Big3 entered into a Unit Purchase Agreement

---

[4] As noted *infra* Part IV.B.1, because the Anti-SLAPP Motion challenges the legal sufficiency of the FAC, the Court assumes that the FAC's allegations are true for the purposes of that motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-3466-DMG (SKx)** | Date | November 29, 2018 |
|---|---|---|---|

| Title | *Big3 LLC, et al. v. Ahmed Al-Rumaihi, et al.* | Page | 3 of 13 |
|---|---|---|---|

("Agreement"), which provided that Sport Trinity would pay Big3 $11.5 million upon execution of the Agreement and an additional $9 million over a three-year period in exchange for a small, "passive, minority stake" in Big3. *See id.* Sport Trinity paid only $7.5 million of its initial $11.5 million obligation. *See id.* at ¶ 42.

Although Kwatinetz has repeatedly attempted to collect the remainder of the funds for Big3, Defendants Al-Ramaihi and Sabi made excuses for Sport Trinity's failure to pay. *See id.* at ¶¶ 47–70. On or around February 14, 2018, Big3 initiated arbitration proceedings against Sport Trinity to obtain the amount owed under the Agreement. *See id.* at ¶¶ 71–75. After the arbitration proceedings began, "Defendants were removed from all rights and privileges" in Big3. *Id.* at ¶ 83.

On or around March 7, 2018, Roger Mason, who was the Commissioner of Big3 at that time, arranged a telephone call between Sabi and Jerome Williams, the latter of whom is "an informal leader among the Big3 players [who] communicated on behalf of the interests of players to management." *Id.* at ¶¶ 85–86. During the call, Sabi falsely claimed that: "(1) [Sabi] and his partners were the lead investors in the Big3, (2) [Sabi] and his partners had already paid $21.5 million to the Big3, (3) [Sabi] and his partners wanted to give millions of dollars more to the Big3 and to charities affiliated with the players, but that BIG3[,] . . . Kwatinetz[,] and [Jackson] were preventing this from happening, (4) [Sabi and his partners] had offered [Big3] $1.5 [million] in additional funds for free to help promote the league during the All-Star weekend, and (5) [Sabi] and his partners were now forced to sue Big3[,] which could destroy the league." *See id.* at ¶ 87. Additionally, it appears that during this telephone call, Sabi "aided and abetted" Mason in making the false allegation that Kai Henry (*i.e.*, another individual employed by Big3 at that time) had informed Mason that Kwatinetz referred to African American players as "[r]ich niggers." *See* FAC at ¶¶ 89–90, 95, 103; FAC, Ex. E (Williams Suppl. Decl.) [Doc. # 1]. In fact, "Kwatinetz never had and never would make such a statement[.]" FAC at ¶ 96.

After that call, Williams (at Mason's request) told Chauncey Billups about the false representations that Sabi had made.[5] *See id.* at ¶¶ 91–94; FAC, Ex. D (Williams Decl.) [Doc. # 1]. Further, Mason later repeated Henry's purported assertion about Kwatinetz in a "widely distributed press release . . . ." *See id.* at ¶ 90. At some unspecified point in time, one or more unknown speakers apparently referred to Jackson, Kwatinetz, and "all players of the league" as "racist and hostile." *See id.* at ¶ 106.

---

[5] Billups is another player who has "an important informal role in communicating concerns between players and management in the BIG3." *See* FAC at ¶ 92.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-3466-DMG (SKx) | Date | November 29, 2018 |
|---|---|---|---|

| Title | *Big3 LLC, et al. v. Ahmed Al-Rumaihi, et al.* | Page | 4 of 13 |
|---|---|---|---|

The FAC's first two causes of action arise out of Henry's alleged statement about Kwatinetz and the "racist and hostile" remark. *See id.* at 100–01. It appears that the trade libel and intentional interference with prospective economic relations causes of action are predicated an all "defamatory statements" identified in the FAC. *See id.* at 101–03.

IV.
DISCUSSION

**A.    Motion for Jurisdictional Discovery**

Pursuant to 28 U.S.C. section 1332(a)(3), a district court has original jurisdiction over a civil action between "citizens of different States and in which citizens or subjects of a foreign state are additional parties" wherein the amount in controversy exceeds $75,000, exclusive of interests and costs. Plaintiffs seek $1.2 billion in damages. FAC at ¶ 6. The FAC alleges that Jackson and Kwatinetz are residents of California, *id.* at ¶¶ 8–9, which is a *prima facie* showing that they are citizens of that state. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("The natural person's state citizenship is . . . determined by [his or] her state of domicile . . . ."); 13E Charles Alan Wright, Federal Practice & Procedure § 3612 (3d ed. 2017) ("It is assumed . . . that a person's current residence is also his domicile"). The FAC alleges that Sabi is a U.S. citizen who resides in Florida, which is his presumptive state of citizenship. FAC at ¶ 13. Al-Hamadi, Thani, and Baker are citizens of Qatar. FAC at ¶¶ 11–12 (discussing Al-Hamadi and Thani's citizenship); Sabi Decl. re Removal at ¶ 3 (discussing Al-Hamadi's, Thani's, and Baker's citizenship) [Doc. # 1-1]; Al-Rumaihi Decl. re Removal at ¶ 3 (same) [Doc. # 1-3]. Although the parties agree that Al-Rumaihi is a Qatari citizen, *see* FAC at ¶ 10; Opp'n re MDJ at 4 ("Plaintiffs accurately allege that . . . Al-Rumaihi is a citizen of Qatar."), they dispute whether Al-Rumaihi is a citizen of California for the purposes of 28 U.S.C. section 1332(a),[6] *see* MDJ at 3; Opp'n re MDJ at 2.

---

[6] Because Big3 is an LLC, it is a citizen of every state in which its owners/members are citizens. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899–900 (9th Cir. 2006). In the Removal Notice, the Moving Defendants allege that none of the members of Big3 are domiciled in Florida or Qatar. *See* Removal Notice at ¶¶ 21–34 (alleging, *inter alia*, that most of the members are domiciled in California) [Doc. # 1]. Plaintiffs do not challenge these allegations. Accordingly, the Court concludes at this juncture that Big3 is not a citizen of Florida or Qatar. *See* 28 U.S.C. § 1446(a) ("A defendant or defendants desiring to remove any civil action from a State court shall file . . . a notice of removal . . . containing a short and plain statement of the grounds for removal . . . ."); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014) (observing that "§ 1446(a) tracks the general pleading requirement stated in Rule 8(a)[,]" and that Congress intended courts to "apply the same liberal rules that apply to other matters of pleading" (internal quotation marks omitted)).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-3466-DMG (SKx)** | Date | November 29, 2018 |
|---|---|---|---|

| Title | *Big3 LLC, et al. v. Ahmed Al-Rumaihi, et al.* | Page | 5 of 13 |
|---|---|---|---|

Plaintiffs seek leave to serve upon Al-Rumaihi certain interrogatories and document requests that are intended to determine his immigration status and the nature and extent of his contacts with California. *See* Meiselas Decl., Ex. A [Doc. # 10-1]. As noted above, the text of Section 1332(a)(3) confers jurisdiction upon cases between "citizens of different States and in which citizens or subjects of a foreign state are additional parties[.]" Al-Rumahi's passport and B-1 visa establish that he is a Qatari citizen.[7] *See* Al-Rumaihi Decl. re MJD at ¶¶ 6–8 [Doc. # 37]; Al-Rumaihi Decl. re MJD, Exs. A–C [Doc. ## 37-1, 37-2, 37-3]. Unlike Section 1332(a)(2), Section 1332(a)(3) does not deprive federal courts of jurisdiction over cases involving foreign citizens who are domiciled in the United States. *Compare* 28 U.S.C. § 1332(a)(2), *with* 28 U.S.C. § 1332(a)(3). Therefore, Al-Rumaihi's contacts with California have no bearing on whether this Court has subject matter jurisdiction.

Moreover, even if Section 1332(a)(3) excluded cases in which a foreign citizen defendant is domiciled in the same state as a plaintiff, that exclusion would apply to only foreign citizens "who are lawfully admitted for permanent residence in the United States[.]" *See* 28 U.S.C. § 1332(a)(2). As a matter of law, Al-Rumaihi's B-1 visa demonstrates that he has not been lawfully admitted for permanent residence in this country. *See Foy v. Schantz, Schatzman & Aaronson, P.A.*, 108 F.3d 1347, 1349 (11th Cir. 1997) ("[W]e hold that the permanent resident alien provision of § 1332(a) applies only to aliens who have received permission from the [federal government] to remain permanently in this country"); *Kato v. Cty. of Westchester*, 927 F. Supp. 714, 716 (S.D.N.Y. 1996) ("[A]liens who have been accorded lawful permanent resident status under the immigration laws are considered aliens 'admitted for permanent residence,' while aliens admitted to the United States on temporary nonimmigrant visas are not."); *see also* 8 C.F.R. § 214.2(b)(1) ("Any B-1 visitor for business . . . may be admitted for not more than one year and may be granted extensions of temporary stay in increments of not more than six months each . . . ."); MJD at 5 (conceding that "[a] B1-Visa is a temporary/non-immigrant US visa" and that a holder of a B1-visa can "have no intention of residing in the United States"). Because the discovery Plaintiffs seek will not alter the fact that Al-Rumaihi was a foreign citizen who has not been admitted for permanent residence, Al-Rumaihi Decl. re MJD, Ex. A (passport issued in 2015); [Doc. # 37-1]; Al-Rumaihi Decl. re MJD, Ex. B (diplomatic

---

[7] Plaintiffs submitted a declaration from Joel Mowbray, who attests that Al-Rumaihi told him that Al-Rumaihi was born in Chicago. *See* Mowbray at ¶ 5 [Doc. # 28-2]. Assuming *arguendo* that Al-Rumaihi in fact made that statement, Al-Rumaihi's passport, which shows that he was born in Qatar, *see* Al-Rumaihi Decl. re MJD, Exs. A–B [Doc. ## 37-1, 37-2], would be sufficient to rebut that representation. *Cf. Rancheria v. Bonham*, 872 F. Supp. 2d 964, 968 (N.D. Cal. 2012) ("Where a factual motion to dismiss is made and only written materials are submitted for the court's consideration (*i.e.*, no hearing is held), a plaintiff need only establish a *prima facie* case of jurisdiction.") (citing *Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1985))); *Leite v. Crane Co.*, 749 F.3d 1117, 1121–22 (9th Cir. 2014) (holding that a motion to remand for lack of subject matter jurisdiction is governed by Rule 12(b)(1) standards).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-3466-DMG (SKx)** | | Date | November 29, 2018 |
|---|---|---|---|---|

| Title | *Big3 LLC, et al. v. Ahmed Al-Rumaihi, et al.* | | Page | 6 of 13 |
|---|---|---|---|---|

passport issued in 2013) [Doc. # 37-2]; Al-Rumaihi Decl. re MJD, Ex. C (B-1 visa issued in 2015) [Doc. # 37-3], their motion is futile.

In light of the foregoing, the Court **DENIES** Plaintiffs' MJD. *Cf. Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, (9th Cir. 2003) ("[A] refusal to grant discovery to establish jurisdiction is not an abuse of discretion when 'it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction . . . .'" (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977))).

## B.     Anti-SLAPP Motion

### 1.     Legal Standard

California's Anti-SLAPP statute "permits a defendant to pursue early dismissal of meritless lawsuits arising from conduct by the defendant in furtherance of the right of petition or free speech." *Greater L.A. Agency on Deafness, Inc. v. Cable News Network*, 742 F.3d 414, 419 (9th Cir. 2014); *see* Cal. Civ. Proc. Code § 425.16. Resolution of an Anti-SLAPP motion calls for a two-step procedure. *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 733 (2003). First, the defendant must show that the challenged action arises from protected activity—*i.e.*, "the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue[.]" *See id.* (quoting Cal. Civ. Proc. Code § 425.16(b)(1)). If the defendant satisfies that burden, then the plaintiff must demonstrate a probability of prevailing on his or her claims. *Id.*

"If a defendant makes an anti-SLAPP motion to strike founded on purely legal arguments, then the analysis is made under Fed. R. Civ. P. 8 and 12 standards; if it is a factual challenge, then the motion must be treated as though it were a motion for summary judgment and discovery must be permitted." *Z.F. v. Ripon Unified Sch. Dist.*, 482 F. App'x 239, 240 (9th Cir. 2012). Under Rules 8 and 12, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Id.* (citing *Twombly*, 550 U.S. at 555). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-3466-DMG (SKx)** | Date | November 29, 2018 |
|---|---|---|---|

| Title | *Big3 LLC, et al. v. Ahmed Al-Rumaihi, et al.* | | Page | 7 of 13 |
|---|---|---|---|---|

Upon granting an Anti-SLAPP motion to strike that challenges the legal sufficiency of a plaintiff's claims, a federal court must determine whether leave to amend should be granted in accordance with Federal Rule of Civil Procedure 15. *See Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004). Under Rule 15, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts." *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*)).

Here, the Moving Defendants challenge the legal sufficiency of the FAC.[8]  *See* Opp'n to *Ex Parte* Appl. to Coordinate Proceedings at 6, 13 ("Defendants' Anti-SLAPP Motion is more akin to a motion to dismiss under Rule 12(b)(6), rather than a motion for summary judgment under FRCP 56.") [Doc. # 21]; Opp'n re MLDS at 9 ("[T]he Anti-SLAPP Motion attacks the legal sufficiency of the pleadings . . . .") [Doc. # 24].

**2.      Step One—Protected Activity**

California's Anti-SLAPP statute defines "protected activity" such that it includes "any . . . conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." *See* Cal. Civ. Proc. Code § 425.16(e)(4). "[E]ven private communications" constitute protected activity "so long as they concern a public issue." *See Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 897 (2004). "A public issue is implicated if the subject of the statement or activity underlying the claim (1) was a person or entity in the public eye; (2) could affect large numbers of people beyond the direct participants; or (3) involved a topic of widespread, public interest." *Jewett v. Capital One Bank*, 113 Cal. App. 4th 805, 814 (2003). The state legislature intended the term "protected activity" to have "broad application[.]" *See Wilbanks*, 121 Cal. App. 4th at 897 n.4.

---

[8] Before briefing on the instant motions closed, the Moving Defendants represented to the Court and Plaintiffs that it was unnecessary to hear the MLDS before the Anti-SLAPP Motion because "the standard[s] under FRCP 8 and 12(b) apply (rather than FRCP 56) . . . ." *See* Opp'n to *Ex Parte* Appl. to Coordinate Proceedings at 13 n.4 [Doc. # 21]. Yet, in their reply for the Anti-SLAPP motion, the Moving Defendants argue that, if the Court finds that any of Plaintiffs' claims are adequately pled, then the Court should continue the hearing on the Anti-SLAPP Motion and permit Plaintiffs to undertake discovery. *See* Reply re Anti-SLAPP Mot. at 9 n.3 [Doc. # 29]. The Court rejects the Moving Defendants' request because it is untimely and contradicts their prior representations. Should they file a successive Anti-SLAPP motion, then they must clarify whether and to what extent they intend to raise a factual challenge to Plaintiffs' claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-3466-DMG (SKx)** | Date | November 29, 2018 |
|---|---|---|---|

| Title | *Big3 LLC, et al. v. Ahmed Al-Rumaihi, et al.* | Page | 8 of 13 |
|---|---|---|---|

Here, all of the statements giving rise to Plaintiffs' claims constitute protected activity because they involve topics of widespread public interest. The "racist and hostile" remark and the assertion that Kwatinetz used a racial slur garnered the attention of the *New York Post*, Hershman Decl., Ex. JJ at 143–44 [Doc. # 8-3], TMZ, Hershman Decl., Ex. KK at 147–48 [Doc. # 8-3], and the *Denver Post*, Hershman Decl., Ex. LL [Doc. # 8-3]. Indeed, the FAC concedes that the "racist and hostile" remark was "repeated in the media." *See* FAC at ¶ 106. The remainder of the statements of which Plaintiffs complain concern investment in and the management of Big3, *see* FAC at ¶ 87, topics that have caught the attention of *VIBE*, *see* Hershman Decl., Ex. D at 172–74 (reporting on Plaintiffs' allegations that Defendants failed to contribute all of the promised capital) [Doc. # 8-2], TMZ, *see* Hershman Decl., Ex. E at 177–79 (same) [Doc. # 8-2], *Business Insider*, *see* Hershman Decl., Ex. MM at 155–57 (expressing concern regarding the manner in which Big3's games are televised and the ages of its players) [Doc. # 8-3], the *New York Post*, *see* Hershman Decl., Ex. SS at 183–84 (reporting on Big3's suspension of Allen Iverson) [Doc. # 8-3], and *USA Today*, *see* Hershman Decl., Ex. TT at 186 (reporting that Fox Sports agreed to cover another Big3 season) [Doc. # 8-3]. Indeed, the media's interest in Big3's management further reinforces the conclusion that the "racist and hostile" remark and Kwatinetz's purported use of a racial slur is a matter of widespread, public interest. Accordingly, the Court concludes that Plaintiffs' claims arise out of protected activities within the meaning of California's Anti-SLAPP statute, even though several of these statements were made during the course of private conversations.

### 3.      Step Two—Legal Sufficiency

#### a.      Causes of Action for Defamation and Defamation *Per Se*

Under California common law, "[t]he tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.'"[9] *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (quoting 5 B.E. Witkin, Summary of Cal. Law, Torts § 529 (10th ed. 2005)). As noted *supra* Part III, Jackson and Kwatinetz's two defamation claims arise out of Kwatinetz's purported use of a racial slur

---

[9] The FAC alleges two separate causes of action that are styled as "defamation" and "defamation *per se*." *See* FAC at 100–01. Yet, the parties do not differentiate between these two claims, and treat them as if they have precisely the same elements. *See, e.g.*, Anti-SLAPP Mot. at 25; Opp'n re Anti-SLAPP Mot. at 24 [Doc. # 25]. The Court shall do the same. In any event, it is likely that Plaintiffs intended to refer to defamation *per quod* and defamation *per se*, which share most of the same elements. *See Barker v. Fox & Assocs.*, 240 Cal. App. 4th 333, 351 (2015) (observing that a defamation *per se* claim involves a statement that is defamatory on its face, whereas a defamation *per quod* claim concerns a statement that "requires an explanation of the surrounding circumstances . . . to make its meaning clear").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-3466-DMG (SKx)** | Date | November 29, 2018 |
|---|---|---|---|

| Title | *Big3 LLC, et al. v. Ahmed Al-Rumaihi, et al.* | Page | 9 of 13 |
|---|---|---|---|

and the "racist and hostile" remark. *See* FAC at 100–01. The Court shall address each of these statements in turn.

### i.  Henry's Assertion That Kwatinetz Called Players "Rich Niggers"

The FAC alleges that during the March 7, 2018 telephone call between Sabi, Mason, and Williams, Mason asserted that Henry heard Kwatinetz refer to African American players as "[r]ich niggers." *See* FAC at ¶¶ 89–90, 95, 103; FAC, Ex. E (Williams Suppl. Decl.) [Doc. # 1]. Further, the FAC alleges that Kwatinetz never made the underlying statement, and that Henry insisted he did not claim Kwatinetz used that slur. *See* FAC at ¶¶ 96–98. Moreover, this statement is defamatory and has a natural tendency to cause damage because it has the propensity to impugn Kwatinetz's reputation. *See Redfearn v. Trader Joe's Co.*, 20 Cal. App. 5th 989, 1007 (2018) (holding that a plaintiff sufficiently alleged defamation because he averred that the defendant made "false statements that would have a natural tendency to injure him in his trade or business"). With regard to the publication element, it is fair to infer that Sabi elicited the statement from Mason during the call because the FAC avers that Sabi "aided and abetted" Mason in repeating that statement. *See* FAC at ¶ 89; *see also Saunders v. Superior Court of L.A. Cty.*, 27 Cal. App. 4th 832, 846 (1994) ("Liability may also be imposed on one who aids and abets the commission of an intentional tort if the person . . . knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act . . . ."); *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw *the reasonable inference* that the defendant is liable for the misconduct alleged." (emphasis added)).

Additionally, although Mason was the individual who actually repeated this purported false statement in a press release, *see* FAC at ¶ 90, Sabi may be held liable for Mason's alleged misconduct pursuant to a conspiracy theory of liability. Specifically, the FAC alleges that Sabi volunteered certain false statements regarding Big3's capital structure and management during the March 7, 2018 telephone call, *see* FAC at ¶ 87, Sabi and Mason were "in close communication" in the days preceding the call, *see id.* at ¶ 84, Defendants had paid Mason a "substantial 'finder's fee'" for introducing them to Big3, *see id.* at ¶ 34, and Mason had a secret romantic relationship with Sabi's sister, *see id.* at ¶ 33. These allegations give rise to the plausible inference that Mason acted at the behest of Sabi to "undermine the existing leadership in the league" in retaliation for Big3's initiation of arbitration proceedings and its removal of Defendants' rights and privileges in the league. *See* FAC at ¶¶ 82–88; *see also Saunders*, 27 Cal. App. 4th at 845–46 ("The elements of a civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act done in furtherance of the common

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-3466-DMG (SKx)** | Date | November 29, 2018 |
|---|---|---|---|

| Title | *Big3 LLC, et al. v. Ahmed Al-Rumaihi, et al.* | Page | 10 of 13 |
|---|---|---|---|

design."). Therefore, Kwatinetz's defamation claims against Sabi arising out of the racial slur survive the Anti-SLAPP Motion. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible." (emphasis in original)).

The Moving Defendants insist that Kwatinetz must allege malice to properly state a defamation claim because he is either a public figure or a limited public figure. *See* Anti-SLAPP Mot. at 29–31. The Moving Defendants argue that Kwatinetz founded and managed various media, talent, and production companies in which the media has taken an interest, he publicly defended Steve Bannon, and "the media has documented Kwatinetz's business dealings and . . . alleged mismanagement, erratic behavior, and drug use." *See id.* at 21–22, 31. Assuming *arguendo* that these assertions are true, they do not establish that Kwatinetz has "achieve[d] such *pervasive* fame or notoriety" or that he "occup[ies] [a] position[] of such persuasive power and influence" that "he becomes a public figure for all purposes and in *all contexts*." *See Khawar v. Globe Int'l, Inc.*, 19 Cal. 4th 254, 263 (1998) (emphasis added) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974)). At most, Kwatinetz has achieved some marginal degree of notoriety for such activities. *See Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 165 (1979) (noting that only a "small group of individuals . . . are public figures for all purposes").

Nor have the Moving Defendants shown that Kwatinetz is a limited public figure. They claim that Kwatinetz has become a limited public figure as a result of "articles published on the alleged statements and this dispute." *See* Anti-SLAPP Mot. at 30; *supra* Part IV.B.2. For the purposes of defamation claims arising under California law, however, a plaintiff cannot become a limited public figure unless he or she has "undertaken *some voluntary act* through which he or she sought to influence resolution of the public issue." *See Gilbert v. Sykes*, 147 Cal. App. 4th 13, 24 (2007) (emphasis added) (quoting *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1577 (2005)). This lawsuit demonstrates that Kwatinetz *did not* want the media to report that he used a highly charged racist term. The Moving Defendants also contend that "Kwatinetz's media campaign related to the BIG3 basketball league, Qatar and the [Moving Defendants]" establish that he is a limited public figure. *See* Anti-SLAPP Mot. at 30. Admittedly, certain articles claim that Kwatinetz made public statements concerning the league and Mason's press release. *See* Hershman Decl., Ex. U at 28–34 (Brandchannel's interview with Kwatinetz) [Doc. # 8-3]; Hershman Decl., Ex. KK at 148 ("A spokesperson for Kwatinetz and [Jackson] tells TMZ Sports, 'Mason's claims do not require a dignified response beyond the fact that they are preposterous and false.'") [Doc. # 8-3]. Yet, the Court may not rely on the truth of these articles (*i.e.*, by crediting the authors' assertion that Kwatinetz in fact made such public statements). *See Von Saher*, 592 F.3d at 960; Fed. R. Evid. 801(c) (defining hearsay evidence). Therefore, the Court cannot conclude on this record that Kwatinetz is a public figure or a limited public figure.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-3466-DMG (SKx) | Date | November 29, 2018 |
|---|---|---|---|

| Title | *Big3 LLC, et al. v. Ahmed Al-Rumaihi, et al.* | Page | 11 of 13 |
|---|---|---|---|

On the other hand, Jackson fails to state any defamation claims arising out of *Kwatinetz's* purported use of a racial slur. The statement concerns Kwatinetz's alleged misconduct, and does not "expressly or by clear implication" refer to or impugn Jackson's reputation. *See Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 291–92 (2014). Moreover, the FAC vaguely alleges that the other Defendants conspired with Sabi to retaliate against Plaintiffs, *see* FAC at ¶ 88, but fails to specify each Defendant's role in the alleged conspiracy. Accordingly, the Court **STRIKES** all of the FAC's defamation claims arising out of Kwatinetz's alleged use of a racial slur, except for Kwatinetz's claims against Sabi.[10] *See In re Sagent Tech., Derivative Litig.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003) ("[T]he complaint fails to state a claim because plaintiffs do not indicate which individual defendant or defendants were responsible for which alleged wrongful act."); *Lehman v. Nelson*, 862 F.3d 1203, 1211 (9th Cir. 2017) ("Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint give the defendant fair notice of what the plaintiff's claim is and *the grounds upon which it rests*." (emphasis added) (internal quotation marks omitted) (quoting *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006))).

### ii.    Jackson, Kwatinetz, and the Players are "Racist" and "Hostile"

The FAC does not identify *which* Defendants and/or accomplices referred to Jackson, Kwatinetz, and the players as "racist and hostile[.]" *See* FAC at ¶ 106. For that reason alone, the defamation claims arising out of this alleged statement are legally deficient. *See In re Sagent*, 278 F. Supp. 2d at 1094; *Lehman*, 862 F.3d at 1211. Furthermore, this statement is not a "provably false assertion of fact" that may form the basis of a defamation claim. *Cf. Overhill Farms, Inc. v. Lopez*, 190 Cal. App. 4th 1248, 1262 (2010) ("[G]eneral statements charging a person with being racist, unfair, or unjust—without more— . . . constitute mere name calling and do not contain a provably false assertion of fact."). Consequently, the Court **STRIKES** all of the FAC's defamation claims concerning this statement, including claims made against Defendants Al-Hamadi, Thani, and Baker. *See In re Wells Fargo*, 282 F. Supp. 3d at 1112.

---

[10] Jackson and Kwatinetz also contend that defamation claims arising out of Kwatinetz's alleged use of a racial slur may also be asserted against Defendants Al-Hamdi, Thani, and Baker. The Court *sua sponte* **STRIKES** these defamation claims because there is no plausible basis alleged in the FAC to support them. *See In re Wells Fargo & Co. Derivative Shareholder Litig.*, 282 F. Supp. 3d 1074, 1112 (N.D. Cal. 2017) (holding that a district court may *sua sponte* dismiss a claim without notice if the plaintiff cannot obtain relief against the non-moving defendants).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-3466-DMG (SKx)** | Date | November 29, 2018 |
|---|---|---|---|

| Title | *Big3 LLC, et al. v. Ahmed Al-Rumaihi, et al.* | Page | 12 of 13 |
|---|---|---|---|

> **b.** **Causes of Action for Trade Libel and Intentional Interference with Contractual Relations**

In their opening brief, the Moving Defendants argue that the FAC fails to state a trade libel claim because it is predicated on statements that do not concern the quality of Big3's goods or services. *See* Anti-SLAPP Mot. at 31–32. The Moving Defendants also contend that Plaintiffs do not allege a claim for intentional interference with contractual relations because the pleading does not identify any specific economic relationship between Big3 and any third party that Defendants purportedly disrupted. *See id.* at 32–33. Plaintiffs utterly fail to respond to either of these contentions in their opposition. Therefore, the Court **GRANTS** the motion to strike these two claims.[11] *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue." (quoting *Sportscare of America, P.C. v. Multiplan, Inc.*, No. 2:10–4414, 2011 WL 589955, at *1 (D.N.J. Feb. 10, 2011))); *see also Oakley, Inc. v. Nike, Inc.*, 988 F. Supp. 2d 1130, 1139 (C.D. Cal. 2013) ("[T]he Local Rules permit the Court [to] deem failure to oppose as consent to the granting of the motion." (citing C.D. Cal. L.R. 7-12)).

> **3.** **Attorneys' Fees**

The Anti-SLAPP statute provides that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1). Although this Order grants much of the Moving Defendants' Anti-SLAPP Motion, it will also afford Plaintiffs leave to amend their pleading pursuant to Federal Rule of Civil Procedure 15. *See Knappenberger*, 566 F.3d at 942. Therefore, the Moving Defendants are not entitled to attorneys' fees under the Anti-SLAPP statute at this time.[12] *See Martin v. Inland Empire Utils. Agency*, 198 Cal. App. 4th 611, 633 (2011) ("[B]ecause the court's order granting defendants' anti-SLAPP motion with leave to amend was the functional equivalent of a denial, defendants were not 'prevailing parties' entitled to attorney fees."). The Court thus **DENIES without prejudice** the Moving Defendants' request for attorneys' fees.

---

[11] The Court *sua sponte* **STRIKES** these claims as to Defendants Al-Hamadi, Al Thani, and Baker. *See In re Wells Fargo*, 282 F. Supp. 3d at 1112.

[12] The Moving Defendants have only themselves to blame for this outcome. Had they allowed this case to proceed in Plaintiffs' chosen forum, Rule 15 would have been inapplicable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-3466-DMG (SKx)** | Date | November 29, 2018 |
|---|---|---|---|

| Title | *Big3 LLC, et al. v. Ahmed Al-Rumaihi, et al.* | Page | 13 of 13 |
|---|---|---|---|

**C.     Motion to Lift Discovery Stay**

        Plaintiffs seek leave to undertake discovery in order to oppose the Anti-SLAPP Motion. *See* MLDS at 1–3.  Plaintiffs are not entitled to undertake discovery to resist an Anti-SLAPP Motion that challenges the legal sufficiency of their pleading.  *See Mujica v. AirScan Inc.*, 771 F.3d 580, 593 & n.7 (9th Cir. 2014) ("[P]laintiffs must satisfy the pleading requirements of Rule 8 before the discovery stage, not after it."); *The Garment Workers Ctr. v. Superior Court of L.A. Cty.*, 117 Cal. App. 4th 1156, 1162 (2004) ("If . . . the defendant contends the plaintiff cannot establish a probability of success on the merits because its complaint is legally deficient, no amount of discovery will cure that defect." (footnote omitted)).   Therefore, the Court **DENIES** the MLDS.

**V.**
**CONCLUSION**

        In light of the foregoing, the Court **DENIES** Plaintiffs' MJD, **GRANTS IN PART** and **DENIES IN PART** the Moving Defendants' Anti-SLAPP Motion with leave to amend, and **DENIES** Plaintiffs' Motion to Lift Discovery Stay.  Only Kwatinetz's defamation causes of action against Sabi arising out of the former's alleged use of a racial slur survive the Anti-SLAPP Motion.   Within 21 days after the date of this Order, Plaintiffs shall file a Second Amended Complaint or a notice to the Court and the Moving Defendants that Plaintiffs do not intend to amend the FAC.  Leave to amend is granted *solely* for the purpose of remedying the deficiencies identified in this Order, and not for the purpose of introducing entirely new claims. The Moving Defendants shall file their response within 21 days of Plaintiffs' filing of a Second Amended Complaint or notice of their intention not to amend.

**IT IS SO ORDERED.**