Miles M. Cooley, (SBN 206783)
miles.cooley@dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Tel:   310.595.3000
Fax:   310.595.3300

John B. Bellinger, III (*pro hac admission pending*)
john.bellinger@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, DC  20001-3743
Tel:   202.942.6599
Fax:   202.942.5999

Attorneys for Specially-Appearing Defendant
H.E. AHMED AL-RUMAIHI

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| BIG3 LLC, et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>AHMED AL-RUMAIHI, et al.,<br><br>                    Defendants. | Case No.  2:18-cv-3466-DMG<br><br>*[Assigned to Hon. Dolly M. Gee]*<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO VIENNA CONVENTION ON DIPLOMATIC RELATIONS AND DIPLOMATIC RELATIONS ACT**<br><br>Date:           June 21, 2019<br>Time:          9:30 a.m.<br>Courtroom:  8C |

EAST\167065172.1

CASE NO. 2:18-CV-3466-DMG
REPLY IN SUPPORT OF MOTION TO DISMISS

Specially-Appearing Defendant H.E. Ahmed Al-Rumaihi ("H.E. Al-Rumaihi") submits the following Reply in support of his Motion to Dismiss pursuant to the Vienna Convention on Diplomatic Relations, 23 U.S.T. 3227 (Apr. 18, 1961) ("Vienna Convention") and the Diplomatic Relations Act, 22 U.S.C. § 254d ("Diplomatic Relations Act").

## I. INTRODUCTION

The Vienna Convention's narrow commercial activity exception is inapplicable to a diplomat's pre-appointment conduct. As H.E. Al-Rumaihi demonstrated in his moving papers, that understanding is reflected in multiple authorities, including the language of the treaty, the treaty's drafting history, applicable case law, the interpretation by the Executive Branch, and analysis by academic commentators. Counsel for H.E. Al-Rumaihi are aware of no case that has been allowed to proceed in the United States against a current diplomat relating to the diplomat's commercial activities prior to his or her diplomatic appointment. Not once in this action have Plaintiffs ever offered any legal argument or authority allowing a civil suit against a current diplomat involving prior commercial acts. Plaintiffs do not even do so in their Opposition, which is instead devoted to diversionary arguments that do not provide a basis to deny the Motion to Dismiss. While the Court need not consider Plaintiffs' irrelevant asides, Plaintiffs' arguments fail on their own terms.

As H.E. Al-Rumaihi explained in his motion, the question of jurisdiction is always open, and must be evaluated at every stage of the case. When this Court made its preliminary assessment as to jurisdiction, the pleadings had not yet (and still have not) been settled, no motion pursuant to the Diplomatic Relations Act was pending, and the parties had not otherwise briefed the matter. H.E. Al-Rumaihi had only submitted objections with the clerk of court in response to Plaintiffs' procedurally defective request for a default. By contrast, a response to the SAC is now on file, and that response presents the Court with the evidence and legal

1  authority demonstrating the absence of jurisdiction here.  Indeed, Plaintiffs'
2  Opposition concedes that this suit does not relate in any way to commercial activity
3  during H.E. Al-Rumaihi's diplomatic tenure, thus underscoring – since Article 31(1)
4  (c) of the Vienna Convention only applies to commercial activities carried out
5  *during a diplomat's tenure* – that the commercial activity exception cannot apply.

6  Further, the unprecedented expansion of the commercial activity exception to
7  pre-appointment conduct envisioned by Plaintiffs would have serious repercussions
8  beyond the confines of this case and could put American diplomats stationed around
9  the world at risk of being subjected to civil suits in other countries.

10 For all these reasons, Plaintiffs' resort to the commercial activity exception
11 cannot overcome the Vienna Convention's jurisdictional bar.  This action must now
12 be dismissed in its entirety as to H.E. Al-Rumaihi.

## II.     ARGUMENT

Plaintiffs devote nearly the entirety of their Opposition to impugning H.E. Al-Rumaihi's motives in bringing the Motion.  Of course, Plaintiffs' claims regarding H.E. Al-Rumaihi's supposed motives in no way impact the question of whether the Court can exercise jurisdiction over this dispute.  As demonstrated in H.E. Al-Rumaihi's Motion, and discussed again below, as a matter of law, the commercial activity exception does not apply, and the Court does not have jurisdiction over H.E. Al-Rumaihi pursuant to the commercial activity exception.[1]

---

[1] Further, Plaintiffs' allegations are demonstrably incorrect.  Prior to his diplomatic appointment, H.E. Al-Rumaihi actively participated in this action.  *See*, *e.g.*, ECF No. 1; ECF No. 8.  After notifying the Court of his diplomatic appointment, *see* ECF No. 58, and in the absence of any challenge to his resulting immunity by the Plaintiffs, H.E. Al-Rumaihi reasonably concluded that he did not need to participate further in this action.  Indeed, the Court effectively confirmed as much in its refusal to grant Plaintiffs' motion for default.  ECF No. 77.

In now accusing H.E. Al-Rumaihi of dilatory gamesmanship, Plaintiffs fixate on three extensions to respond to the SAC, suggesting that H.E. Al-Rumaihi

LOS ANGELES, CALIFORNIA 90067-4704

DLA PIPER

### A. The Court Can And Should Evaluate Jurisdiction At This Stage Of The Case

Rather than raising a legal argument in response to H.E. Al-Rumaihi's position on the commercial activity exception, Plaintiffs simply assert that H.E. Al-Rumaihi's jurisdictional defense has "already been definitively rejected" by the Court. Opp. at 2. That argument is unavailing.

At the time the Court issued its preliminary assessment on jurisdiction, it had not been presented with any motion or other substantive briefing to "definitively reject." Before the Court was Plaintiffs' procedurally improper request for entry of default. *See* Dkt. No. 71. Consistent with the requirements of Federal Rule of Civil Procedure 55, H.E. Al-Rumaihi filed objections with the clerk of court asserting, among other things, that a default cannot be entered absent jurisdiction. Dkt. No. 75 at 2. The only other document before the Court addressing jurisdiction was the Notice of New Developments, to which Plaintiffs had never responded. The Court's resulting preliminary assessment of jurisdiction – prior to the presentation of any evidence, argument, or other briefing – was hardly a "definitive rejection" of H.E. Al-Rumaihi's arguments relating to the commercial activity exception. Issues of immunity – especially those impacting foreign and diplomatic relations – should not be definitively rejected without the benefit of full briefing. *See, e.g.*, *FG Hemisphere Assocs., LLC v. Dem. Rep. of Congo*, 447 F.3d 835, 839 (D.C. Cir.

---

unilaterally sought these extensions for purposes of delay. Opp. at 5. Plaintiffs neglect to note that the parties' expressly stated intention in entering into these ***joint*** stipulated extensions (ECF Nos. 63, 65, 67) was to "to allow the parties additional time to continue focusing on the potential for the informal resolution of the case." ECF No. 66.

Also false is Plaintiffs' assertion that H.E. Al-Rumaihi "blatantly defied" the Court in filing his Motion to Dismiss. Opp. at 5. As the Court confirmed on May 13, 2019: "The April 15, 2019 Order did not bar Al-Rumaihi from filing a motion to dismiss for lack of subject matter jurisdiction." ECF No. 90 at 1.

EAST\167065172.1

3

CASE NO. 2:18-CV-3466-DMG
REPLY IN SUPPORT OF MOTION TO DISMISS

2006) (reversing as abuse of discretion denial of foreign sovereign's motion for relief from default judgment, and writing that foreign sovereign's immunity defenses should "be considered carefully and, if possible, that the dispute be resolved on the basis of … all relevant legal arguments"); *Good v. Aramco Servs. Co.*, 971 F. Supp. 254, 256 (S.D. Tex. 1997) (holding foreign sovereign defendant immune under the FSIA and dismissing, after reconsideration of order denying motion to dismiss).

Further, the court's jurisdiction is always subject to inquiry and must be continually evaluated. *Moe v. United States*, 326 F.3d 1065, 1070 (9th Cir. 2003) ("Jurisdiction is at issue in all stages of a case."); *In re Orthopedic "Bone Screw" Prod. Liab. Litig.*, 132 F.3d 152, 155 (3d Cir. 1997) ("The issue of jurisdiction is always open for determination by the court."); *Prou v. United States*, 199 F.3d 37, 45 (1st Cir. 1999) ("[T]he question of subject-matter jurisdiction is always open: courts at every stage of the proceedings are obligated to consider the issue . . . "). Consistent with this ongoing obligation, the Court should do so here, with the benefit of full briefing on the matter. *See Terra Prop. Mgmt. v. Najer Temple*, No. 16-07814, 2016 WL 6330568, at *1 (C.D. Cal. Oct. 28, 2016) ("It is this Court's duty to always examine its own subject matter jurisdiction.") (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)).

### B. Plaintiff's Opposition Confirms That The Commercial Activity Exception Does Not Apply Here

Plaintiffs maintain that the commercial activity exception in Article 31(1)(c) of the Vienna Convention on Diplomatic Relations strips H.E. Al-Rumaihi of diplomatic immunity. Opp. at 4. This is incorrect. As explained in H.E. Al-Rumaihi's Motion, the commercial activity exception addresses those "rare instances" in which a currently accredited diplomat engages in for profit ventures ***at the same time*** he or she is supposed to be performing diplomatic functions. *See Tabion v. Mufti*, 877 F. Supp. 285 (E.D. Va. 1995), *aff'd*, 73 F.3d 535 (4th Cir.

1996). As H.E. Al-Rumaihi detailed in his moving papers, the case law, plain language of the treaty and its drafting history, academic commentary, and interpretation by the Executive Branch all confirm this view. *See* Mot. at 16-22. Simply put, the sole purpose of the "commercial activity" exception in Article 31(1)(c) is to enforce Article 42, which states that "[a] diplomatic agent shall not in the receiving State practice for personal profit any professional or commercial activity." For the exception to apply, therefore, the individual must first be an accredited diplomat, and then he or she must, ***as an accredited diplomat***, affirmatively "***ignore[] the restraints of his [or her] office*** and, contrary to Article 42, ***engage[] in such activity in the receiving State***." *Tabion*, 877 F. Supp. at 291 (emphasis added).

Federal government officials, who "have consistently interpreted the provision narrowly," confirmed this understanding when they explained to Congress during the passage of the Diplomatic Relations Act that the exception did no more than "merely expose[] diplomats to litigation based upon activity expressly prohibited in Article 42." *Tabion*, 73 F.3d at 538 n.6 (citing Diplomatic Immunity: Hearings on S. 476, S. 477, S. 478, S. 1256, S. 1257 and H.R. 7819 Before the Subcomm. on Citizens and Shareholders Rights and Remedies of the Senate Comm. on the Judiciary, 95th Cong., 2d Sess. 32 (1978)); *Sabbithi v. Al Saleh*, 605 F. Supp. 2d 122, 127 (D.D.C. 2009) (explaining that purpose of Article 31.1(c) is to enforce Article 42); *see also* A.R. Taylor-Carroll de Mueller, *Some Aspects of Diplomatic Immunities in the United States*, 6 Law. Am. 1, 24 (1974) ("As regards subparagraph (c), the fact that diplomatic agents are not permitted to carry on any professional or commercial activity, other than cultural activities, in the United States, makes the sub-paragraph of importance only in so far as it guarantees that the appropriate remedy shall be available to persons who have had dealings with delinquent diplomatic agents."). And courts in other countries also recognize that diplomats have immunity from liability for their prior commercial acts. B. Shen,

*Diplomatic Immunities and Privileges* (1988) at 156 (noting that French courts historically applied jurisdictional immunity to commercial disputes even when liability predated diplomatic appointment and that "[t]his principle would appear to hold good today").  Against the great weight of this authority, Plaintiffs have not cited a single case that remotely suggests the commercial activity exception applies to pre-appointment conduct, and counsel for H.E. Al-Rumaihi are aware of no such cases.

Because the commercial activity exception does not apply to a diplomat's pre-appointment conduct, a court need not evaluate the nature (commercial or otherwise) of such pre-appointment conduct.  Instead, when assessing its jurisdiction over a claim based upon such pre-appointment conduct, a court must simply determine whether the defendant presently is entitled to diplomatic immunity.  This is confirmed by the authoritative commentary on the Vienna Convention on Diplomatic Relations regularly cited by U.S. courts and the U.S. Government.  *See, e.g.*, *Tabion*, 73 F.3d at 538; Brief for the United States of America as Amicus Curiae, *Republic of Sudan v. Harrison*, 138 S. Ct. 2671 (2018) (No.16-1094), 2018 WL 2357724 (relying on Professor Eileen Denza's "leading treatise"); *Baoanan v. Baja*, 627 F. Supp. 2d 155, 162 (S.D.N.Y. 2009) (relying on Denza as a "leading diplomatic law expert").  Professor Denza explained that "[t]he court must determine the issue of immunity on the facts at the date when this issue comes before it, and not on the facts at the time when the conduct or events giving rise to a claim or charge took place or at the time when proceedings were begun.  ***It follows that if the defendant becomes entitled to immunity he may raise it as a bar to proceedings relating to prior events or to proceedings if they accept his entitlement***."  Eileen Denza, *Diplomatic Law: Commentary on the Vienna Convention on Diplomatic Relations* 257 (4th ed. 2018) (emphasis added).

Here, Plaintiffs have conceded that this lawsuit ***does not target commercial activities concurrent with H.E. Al-Rumaihi's diplomatic tenure***.  In Plaintiffs' own

words: "***all*** of Plaintiffs' claims against Defendant Al-Rumaihi in this action relate to conduct by Defendant Al-Rumaihi prior to his August 27, 2018 diplomatic appointment." Opp. at 3 (emphasis added). Because the commercial activity exception does not apply to a diplomat's pre-appointment conduct, Plaintiffs' reliance on the commercial activity exception is unavailing.

### C. Sound Policy Reasons Counsel Against The Expansion Of The Commercial Activity Exception Plaintiffs Seek

As demonstrated in H.E. Al-Rumaihi's Motion, every relevant source of authority makes clear that Article 31(1)(c) only applies to commercial activities carried out during the diplomat's tenure. Moreover, expansion of the commercial activity exception to pre-appointment conduct would have serious repercussions beyond the confines of this case. "[I]n the chess game that is diplomacy only the executive has a view of the entire board and an understanding of the relationship between isolated moves." *Spacil v. Crowe*, 489 F.2d 614, 619 (5th Cir. 1974). This Court should not adopt a treaty interpretation that would threaten to disrupt the Executive Branch's foreign policy efforts and place American diplomatic personnel at risk.

Reciprocity is an essential component to international law; extending diplomatic immunity to foreign diplomats in this country consistent with the prevailing understanding of the Vienna Convention "ensures that similar protections will be accorded those that we send abroad to represent the United States." *See Boos v. Barry*, 485 U.S. 312, 323-24 (1988). By contrast, "any deviation . . . would create an acute risk of reciprocation by other States, potentially subjecting U.S. diplomats to controversial litigation in foreign jurisdictions." *Devi v. Silva*, 861 F. Supp. 2d 135, 142 (S.D.N.Y. 2012). And the Supreme Court has been clear that statutes should be construed so as to avoid "invit[ing] retaliatory action from other nations." *See McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 21 (1963).

The commercial activity exception – as currently applied – "has little significance for the United States since the United States forbids its diplomatic officers to engage in commercial or professional activities unrelated to their official functions." Restatement (Third) of the Foreign Relations Law of the United States § 464, Reporter's Note 9 (1986). That is, the United States already holds its diplomats abroad to the standards that the United States applies to foreign diplomats in the United States susceptible to the commercial activity exception. But the same would not be true if the exception were extended to a diplomat's pre-appointment conduct. U.S. diplomatic officers, and political appointees in particular, frequently have had substantial pre-appointment commercial dealings in the countries to which they have been posted. Indeed, the President may appoint an Ambassador to a particular country precisely because the individual's prior business experience in that country enhances his or her ability to conduct diplomacy. Accordingly, if this court were to construe the commercial activity exception to remove a diplomat's immunity for pre-appointment conduct, this could create serious risks for U.S. diplomats around the world.

For instance, "[s]uch reciprocal actions may seriously threaten United States diplomats who reside in nations that do not value individual civil liberties as highly as does the United States." Lori J. Shapiro, *Foreign Relations Law: Modern Developments in Diplomatic Immunity*, 1989 Ann. Surv. Am. L. 281, 294 (1990). And if American diplomats did not have immunity, they would be at constant risk of being dragged into court on trumped-up charges, especially in countries where the United States is unpopular or where the government bows to popular pressure. After being haled into court on the pretext of pre-appointment business disputes, diplomats could be subject to depositions or other forms of compelled testimony in an effort to probe sensitive national security information. And even in the case of bona fide business disputes, U.S. diplomats would still become embroiled in local controversies, derailing their ability to conduct their official duties. These policy

concerns weigh heavily against the unprecedented expansion of the commercial activity exception urged by Plaintiffs.

### III. CONCLUSION

For the foregoing reasons, H.E. Al-Rumaihi respectfully requests that this Court grant this Motion and dismiss this action against him for lack of jurisdiction.

Dated:  June 7, 2019         **DLA PIPER LLP (US)**

By: */s/ Miles M. Cooley*
  Miles M. Cooley
  John B. Bellinger, III
  Attorneys for Specially-Appearing Defendant
  H.E. AHMED AL-RUMAIHI