UNITED STATES DISTRICT COURT    JS-6
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 18-3466 DMG (SKx)** | Date | July 11, 2019 |
| Title | *Big3 LLC, et al. v. Ahmed Al-Rumaihi, et al.* | Page | 1 of 9 |

Present: The Honorable    DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS - ORDER RE DEFENDANT'S MOTION TO COMPEL ARBITRATION [68] AND DEFENDANT'S MOTION TO DISMISS [84]**

On December 20, 2018, Plaintiffs Big3 Basketball, LLC ("Big3"), O'Shea Jackson, and Jeff Kwatinetz (collectively "Plaintiffs") filed a Second Amended Complaint ("SAC"), alleging the following causes of action against Defendants Ahmed Al-Rumaihi and Ayman Sabi: (1) defamation *per quod*, (2) defamation *per se*, (3) trade libel, and (4) intentional interference with prospective economic relations.[1] [Doc. # 59.] On March 21, 2019, Sabi filed a Motion to Compel Arbitration ("MCA"). [Doc. # 68.] On May 6, 2019, Al-Rumaihi filed a Motion to Dismiss the claims against him for lack of jurisdiction ("MTD"). [Doc. # 84.] Both motions have since been fully briefed. [Doc. ## 69, 70, 93, 100.] The Court finds these matters appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having duly considered the parties' written submissions, the Court **GRANTS** Sabi's MCA, **STAYS** the SAC's claims against Sabi pending arbitration, **GRANTS** Al-Rumaihi's MTD, and **DISMISSES** the SAC's claims against Al-Rumaihi **without prejudice** for lack of subject matter jurisdiction.

**I.
SABI'S MOTION TO COMPEL ARBITRATION [Doc. # 68]**

The Federal Arbitration Act ("FAA") provides that written arbitration agreements in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting 9 U.S.C. § 2). "[U]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under . . . an agreement," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." *See* 9 U.S.C. § 3. The Supreme Court has held that "parties may agree to have

---

[1] This Order incorporates by reference the procedural and factual background included in the Court's November 29, 2018 Order. *See* Nov. 29, 2018 Order at 1–4 [Doc. # 57].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

JS-6

| | | | |
|---|---|---|---|
| Case No. | CV 18-3466 DMG (SKx) | Date | July 11, 2019 |
| Title | Big3 LLC, et al. v. Ahmed Al-Rumaihi, et al. | Page | 2 of 9 |

an arbitrator decide not only the merits of a particular dispute but also '"gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). To determine whether the parties delegated to an arbitrator the authority to decide the arbitrability of a dispute, a federal court must determine whether the arbitration agreement "clearly and unmistakably delegates arbitrability questions to the arbitrator . . . ." *See Brennan v. Opus Bank*, 796 F.3d at 1125, 1128–29, 1132 (9th Cir. 2015).

It is undisputed that on July 14, 2017, Plaintiff Big3 and Sport Trinity, LLC executed the Second Amended and Restated Limited Liability Company Agreement ("LLA"), and that the LLA includes an arbitration agreement.[2] *See* LLA at 2, 44 (listing signatories to the LLA) [Doc. # 68-3];[3] LLA at §§ 9.1–9.2 (arbitration agreement) [Doc. # 68-3]. Although Sabi signed the LLA only in his capacity as a member of Sport Trinity, LLC, *see* LLA at 39 [Doc. # 68-3], Sabi claims that he has standing to invoke the LLA's arbitration agreement under agency and equitable estoppel principles, *see* Mem. of P. & A. re MCA at 14–17 [Doc. # 68-1]. Furthermore, Sabi claims that the LLA delegated to the arbitrator the authority to determine whether Plaintiffs' claims fall within the scope of the arbitration agreement. *See* Mem. of P. & A. re MCA at 12–13 [Doc. # 68-1]. The parties dispute whether Sabi waived the right to compel arbitration under the LLA. *See, e.g.*, Opp'n re MCA at 13–19 [Doc. # 69]; Reply re MCA at 8–15 [Doc. # 70].

**A.     Sabi's Standing to Invoke the LLA's Arbitration Agreement**

With regard to Sabi's claim of standing to compel arbitration, Plaintiffs challenge only Sabi's assertion that he may invoke the LLA's arbitration provisions via agency principles. *See* Opp'n re MCA at 19–22 [Doc. # 69]. Plaintiffs utterly fail to raise any argument to rebut Sabi's claim that he may compel Plaintiffs to arbitrate under the doctrine of equitable estoppel. *See id.*; Mem. of P. & A. re MCA at 16–17 (advancing this contention) [Doc. # 68-1]. Therefore,

---

[2] Plaintiffs do not challenge Sabi's assertion that all three Plaintiffs are bound by the LLA's terms. *See* Mem. of P. & A. re MCA at 6–7 ("Plaintiffs and Sport Trinity are among the parties to the . . . []LLA[] . . . . The LLA, governed by Delaware law and signed by . . . Plaintiffs in their individual capacities, contains Plaintiffs' unambiguous agreement arbitrate . . . .") [Doc. # 68-1]; Opp'n re MCA at 5–23 [Doc. # 69]; *see also Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

[3] All page references herein are to page numbers inserted by the CM/ECF system.

|  | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>CIVIL MINUTES—GENERAL | JS-6 |
|---|---|---|
| Case No. | CV 18-3466 DMG (SKx) | Date July 11, 2019 |
| Title | Big3 LLC, et al. v. Ahmed Al-Rumaihi, et al. | Page 3 of 9 |

Plaintiffs have waived their challenge to Sabi's standing to compel arbitration under equitable estoppel principles. *See Stichting Pensioenfonds ABP*, 802 F. Supp. 2d at 1132.

B.   **The Arbitrator's Authority to Determine Arbitrability**

With respect to the arbitrator's authority to determine arbitrability, the arbitration agreement provides in pertinent part: "Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, *including the determination of the scope or applicability of this agreement to arbitrate*, shall be determined by arbitration in Los Angeles, California before an arbitrator." *See* LLA at § 9.1 (emphasis added) [Doc. # 68-3]. This language clearly and unmistakably delegates to the arbitrator the authority to determine whether the SAC's claims against Sabi fall within the scope of the arbitration agreement. *Cf. Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1207–10 (9th Cir. 2016) (holding that a similar provision "clearly and unmistakably" delegated the issue of arbitrability to the arbitrator). Plaintiffs nonetheless insist that the SAC's claims "are clearly not covered by this agreement to arbitrate" because these allegations are "far outside of any formalized agreements as to the parties' business affairs." *See* Opp'n re MCA at 21 [Doc. # 69]. Assuming *arguendo* that Plaintiffs are correct on this point, the Court must still enforce the delegation clause. *See Henry Schein, Inc.*, 139 S. Ct. at 531 ("[W]e reject the 'wholly groundless' exception [to the enforcement of a delegation clause] . . . . When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract.").

C.   **Waiver of the Right to Arbitrate**

"[A]ny party arguing waiver of arbitration bears a heavy burden" of establishing three elements: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *See Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (internal quotation marks omitted) (quoting *Fisher v. A.G. Becker, Paribas, Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)). Sabi concedes that the first element has been satisfied. *See* Reply re MCA at 9 ("Sabi's knowledge of his right to arbitrate is not disputed . . . .") [Doc. # 70.] Plaintiffs argue that Sabi undertook acts inconsistent with the right to compel arbitration by removing the action to federal court, filing an Anti-SLAPP motion to strike after removal, opposing Plaintiffs' requests to conduct limited discovery, and stipulating to continue Sabi's deadline to respond to the SAC. *See* Opp'n re MCA at 14–17 [Doc. # 69]. Assuming *arguendo* that such acts are inconsistent with the right to arbitrate, Plaintiffs nonetheless must submit their claims against

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

JS-6

| Case No. | CV 18-3466 DMG (SKx) | Date | July 11, 2019 |
|---|---|---|---|

| Title | Big3 LLC, et al. v. Ahmed Al-Rumaihi, et al. | Page | 4 of 9 |
|---|---|---|---|

Sabi to arbitration because they have not shown that they suffered prejudice as a result of Sabi's conduct.

"[I]n order to establish prejudice, the plaintiffs must show that, as a result of the defendants having delayed seeking arbitration, they have incurred costs that they would not otherwise have incurred, that they would be forced to relitigate an issue on the merits on which they have already prevailed in court, or that the defendants have received an advantage from litigating in federal court that they would not have received in arbitration." *Martin*, 829 F.3d at 1126 (citations omitted). Plaintiffs argue that because Sabi has "spent over eleven months litigating this matter in [his] chosen forum, . . . . [they] have incurred considerable expenses in [an] attempt to deflect Defendants' aggressive litigation tactics, including expenses involved in opposing Defendants' Anti-SLAPP motion and Plaintiffs' efforts to obtain limited discovery to remand this case to Plaintiffs' chosen forum." *See* Opp'n re MCA at 18–19 [Doc. # 69]. Plaintiffs further claim that Sabi's "delaying tactics have resulted in lost evidence"—*i.e.*, the filing of the Anti-SLAPP motion stayed discovery and prevented Plaintiffs from acquiring evidence to remand this matter to state court. *See id.* at 19. Additionally, they contend that "the delays caused by Defendants' Anti-SLAPP also allowed . . . Al-Rumaihi time to obtain his purported diplomatic status thus to avoid the jurisdiction of U.S. courts, arbitration or otherwise, entirely."[4] *See id.* Plaintiffs also contend that Sabi's decision to seek continuances of his deadline to respond to their claims has prevented them from receiving "vital information as to Defendants' defenses, admissions, and/or denials," which would have allowed them to "conduct[] discovery accordingly." *See id.*

Critically, Defendants Al-Rumaihi and Sabi jointly filed the Anti-SLAPP motion to strike. *See* Anti-SLAPP Mot. at 2 [Doc. # 8]. Consequently, Al-Rumaihi expressed his intention to challenge the legal sufficiency of Plaintiffs' First Amended Complaint, regardless of whether Sabi had done so as well. Thus, there is no indication that Plaintiffs would have saved on attorneys' fees or costs if Sabi had moved to compel arbitration immediately after removing the action to federal court.[5] Furthermore, Plaintiffs' attempts to remand the action to state court and obtain discovery in opposition to the Anti-SLAPP motion were "self-inflicted wounds" that do

---

[4] As discussed *infra* Part II, Al-Rumaihi maintains that on August 27, 2018, he was appointed as the "Commercial Attaché for Investment for the State of Qatar."

[5] In passing, Plaintiffs suggest that compelling them to arbitrate their claims would prejudice them because Sabi would secure a "mulligan" on the Court's ruling on Sabi's Anti-SLAPP motion. *See* Opp'n at 6 [Doc. # 69]. Yet, Plaintiffs would not be forced to relitigate whether they pleaded sufficient facts to state claims for relief in arbitration. Therefore, this assertion does not satisfy Plaintiffs' "heavy burden" of showing prejudice. *See* Martin, 829 F.3d at 1124.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

JS-6

| Case No. | **CV 18-3466 DMG (SKx)** | Date | July 11, 2019 |
|---|---|---|---|
| Title | ***Big3 LLC, et al. v. Ahmed Al-Rumaihi, et al.*** | Page | 5 of 9 |

not constitute prejudice. *See Martin*, 829 F.3d at 1126 ("To prove prejudice, plaintiffs must show more than 'self-inflicted' wounds that they incurred as a direct result of suing in federal court contrary to the provisions of an arbitration agreement."). The Court previously explained that Plaintiffs' motion for jurisdictional discovery was "futile," and that Plaintiffs were not entitled to discovery on their claims because Sabi and Al-Rumaihi challenged only the legal sufficiency of the First Amended Complaint.[6] *See* Nov. 29, 2018 Order at 4–7, 13 [Doc. # 57]. Moreover, even if *Sabi* had attempted to invoke his right to arbitration earlier in the proceedings, that motion would have no effect on whether *Al-Rumaihi* would later seek immunity from suit. Lastly, Plaintiffs offer no evidence showing that they are no longer unable to obtain "vital information as to [Sabi's] defenses, admissions, and/or denials" in arbitration. Accordingly, Plaintiffs have not discharged their "heavy burden" of proving that they "would be prejudiced should the court now compel arbitration . . . ." *See Martin*, 829 F.3d at 1124, 1128.

The Court exercises its discretion to stay (and not dismiss) Plaintiffs' claims against Sabi pending arbitration. *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) ("[A] district court may either stay the action or dismiss it outright when . . . the court determines that all of the claims raised in the action are subject to arbitration.").

**II.
AL-RUMAIHI'S MOTION TO DISMISS [Doc. # 84]**

Al-Rumaihi moves to dismiss on the ground that Article 31 of the Vienna Convention deprives this Court of jurisdiction over him.[7] *See* MTD at 2 [Doc. # 84]. The Vienna Convention limits this Court's subject matter jurisdiction over claims against diplomatic agents. *See United States v. Sharaf*, 183 F. Supp. 3d 45, 49 (D.D.C. 2016); *see also* 22 U.S.C. § 254d ("Any action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention . . . shall be dismissed."). Federal Rule of Civil Procedure 12(b)(1) permits Al-Rumaihi to move for dismissal for lack of subject matter jurisdiction.

---

[6] Admittedly, Defendants initially did not clarify whether their Anti-SLAPP motion merely contested the legal sufficiency of Plaintiffs' claims. *See* Nov. 29, 2018 Order at 7 n.8 [Doc. # 57]. Nevertheless, Plaintiffs presumably could have obtained such clarification during a meaningful meet-and-confer on the Anti-SLAPP Motion and/or their Motion to Lift Discovery Stay.

[7] Al-Rumaihi also claims that Article 29 of the Vienna Convention bars this Court from exercising jurisdiction over him. *See* MTD at 2 [Doc. # 84]. Yet, Article 29 merely: (1) constrains a receiving state's authority to arrest or detain a diplomatic agent, and (2) obligates the receiving state to protect the diplomatic agent's "person, freedom or dignity." *See* Vienna Convention, Apr. 18, 1961, 23 U.S.T. 3227. Article 29 does not bar this Court from exercising subject matter jurisdiction over the SAC's claims against Al-Rumaihi.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

JS-6

| Case No. | CV 18-3466 DMG (SKx) | Date | July 11, 2019 |
|---|---|---|---|
| Title | Big3 LLC, et al. v. Ahmed Al-Rumaihi, et al. | Page | 6 of 9 |

> Article 31.1 of the Vienna Convention provides:
>
> A diplomatic agent shall enjoy immunity from the criminal jurisdiction of the receiving State.  He shall also enjoy immunity from its civil and administrative jurisdiction, except in the case of:
> (a) a real action relating to private immovable property situated in the territory of the receiving State, unless he holds it on behalf of the sending State for the purposes of the mission;
> (b) an action relating to succession in which the diplomatic agent is involved as executor, administrator, heir or legatee as a private person and not on behalf of the sending State; [or]
> (c) an action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions.

See Vienna Convention, Apr. 18, 1961, 23 U.S.T. 3227.

In the course of ruling on Plaintiffs' request for the entry of default against Al-Rumaihi, the Court concluded that Article 31.1(c)'s exception to immunity applied to at least some of Plaintiffs' claims against Al-Rumaihi—*i.e.*, those that "(a) occurred prior to August 27, 2018, and (b) relate to the parties' commercial dealings." *See* Apr. 15, 2019 Order at 2 [Doc. # 77]. The Court reasoned that such "claims necessarily concern 'the pursuit of trade or business activity that is unrelated to [Al-Rumaihi's] diplomatic assignment[.]'" *See id.* (quoting *Sabbithi v. Al Saleh*, 605 F. Supp. 2d 122, 127 (D.D.C. 2009)).

The parties do not dispute that Al-Rumaihi was appointed as the "Commercial Attaché for Investment for the State of Qatar" on August 27, 2018, nor do they dispute that all of the SAC's claims against him arise out of misconduct allegedly occurring before that date.  *See* MTD at 10 [Doc. # 84]; Opp'n re MTD at 4 ("On May 5, 2019, Plaintiffs' counsel assured Defendant Al-Rumaihi's counsel that all claims asserted against Defendant Al-Rumaihi were premised on conduct that occurred prior to Defendant Al-Rumaihi's August 27, 2018 diplomatic appointment . . . .") [Doc. # 93]; Reply re MTD at 3 ("Plaintiffs' Opposition concedes that this suit does not relate in any way to commercial activity during . . . Al-Rumaihi's diplomatic tenure . . . .") [Doc. # 100].  The parties also do not dispute that as a sitting diplomatic agent, Al-Rumaihi may invoke the Vienna Convention's protections, even though he became a diplomatic agent *after* this suit was commenced.  *See* MTD at 19–20, 27 [Doc. # 84]; Opp'n re MTD at 1–6 (failing to controvert these assertions) [Doc. # 93]; *Abdulaziz v. Miami Dade Cty.*, 741 F.2d 1328, 1329–30 (11th Cir. 1984) ("We hold that . . . diplomatic immunity . . . serves as a defense to suits already commenced.").  Further, it is apparent that the SAC's allegations against Al-

UNITED STATES DISTRICT COURT                    JS-6
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-3466 DMG (SKx)** | Date | July 11, 2019 |
|---|---|---|---|

| Title | *Big3 LLC, et al. v. Ahmed Al-Rumaihi, et al.* | Page | 7 of 9 |
|---|---|---|---|

Rumaihi all concern commercial activities he undertook in this country, and Al-Rumaihi advances no argument to the contrary. *See, e.g.*, SAC at ¶ 23 ("Defendants, in their individual and personal capacity, and using corporate shells including Sport Trinity LLC . . . attempted to seize operational control over Big3 . . . by, among other conduct . . . defaming Plaintiffs . . . .") [Doc. # 59].

Al-Rumaihi argues that Article 31.1(c)'s exception to a diplomatic agent's immunity for civil suits "only applies to for-profit conduct of a 'diplomatic agent'—that is, conduct that occurs concurrent with the diplomatic posting." *See* MTD at 21 [Doc. # 84]. Therefore, Al-Rumaihi's position relies on his interpretation of the term "the diplomatic agent" as it is used in Article 31.1(c). This term is ambiguous. On the one hand, the term could simply be a means of clarifying that the person who engaged in the professional or commercial activity must be the same person who seeks to invoke Article 31.1's general immunity provision, regardless of whether that person was a "diplomatic agent" at the time he or she engaged in that activity. *See, e.g.*, *Gale v. First Franklin Loan Servs.*, 701 F.3d 1240, 1246 (9th Cir. 2012) ("In construing [a] statute, [the] definite article 'the' particularizes the subject which it precedes and is [a] word of limitation as opposed to [the] indefinite or generalizing force [of] 'a' or 'an.'" (alteration in original) (internal quotation marks omitted) (quoting *Onink v. Cardelucci*, 285 F.3d 1231, 1234 (9th Cir. 2002))). Conversely, the provision's use of that term arguably suggests that the professional or commercial activity must be undertaken by someone who has the characteristics of a "diplomatic agent," which Article 1(e) defines as "the head of the mission or a member of the diplomatic staff of the mission[.]" *See* Vienna Convention, Apr. 18, 1961, 23 U.S.T. 3227. As noted above, it is undisputed that Al-Rumaihi was not a diplomatic agent when he engaged in the alleged malfeasance at issue.

To resolve this ambiguity, the Court may consider the executive branch's interpretation of the provision, which is entitled to "great weight." *See Abbott v. Abbott*, 560 U.S. 1, 15 (2010) (quoting *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 185 (1982)); *see also Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 457 (2d Cir. 2003) ("[W]hen a treaty is reasonably susceptible to more than one interpretation, secondary sources must be employed to ascertain appropriate meaning."). Al-Rumaihi points out that "[f]ederal government officials have consistently interpreted the provision *narrowly*" such that "it *merely* expose[s] diplomats to litigation based upon activity expressly prohibited in Article 42." *See Tabion v. Mufti*, 73 F.3d 535, 538 n.6 (4th Cir. 1996) (emphasis added); MTD at 12 ("Likewise, the Executive Branch—whose interpretation of the Vienna Convention is entitled to great deference—has explained that Article 31.1(c) works in conjunction with Article 42 to make clear that, if a diplomat does engage in such an activity, he does not have immunity from related civil actions." (internal quotation marks omitted) [Doc. # 84]. Article 42 provides that "[a] diplomatic

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

JS-6

| | | | |
|---|---|---|---|
| Case No. | **CV 18-3466 DMG (SKx)** | Date | July 11, 2019 |
| Title | *Big3 LLC, et al. v. Ahmed Al-Rumaihi, et al.* | Page | 8 of 9 |

agent shall not in the receiving State practise for personal profit any professional or commercial activity." *See* Vienna Convention, Apr. 18, 1961, 23 U.S.T. 3227. Article 42 does not purport to impose any obligations on a diplomatic agent that arise out of his or her pre-appointment conduct. Rather, Article 42 simply forbids diplomatic agents—and only diplomatic agents—from engaging in certain activities.

Plaintiffs offer no substantive response to Al-Rumaihi's interpretation of Article 31.1(c), but instead simply rely upon the Court's April 15, 2019 Order for the proposition that the exception is applicable. *See* Opp'n re MTD at 4–5 [Doc. # 93]. Plaintiffs do so at their own peril. This Court "has a continuing obligation to assess its own subject-matter jurisdiction," *see Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1093 (9th Cir. 2004), and "it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient[,]" *see City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 889 (9th Cir. 2001) (emphasis deleted) (internal quotation marks omitted) (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)). Furthermore, it is unsurprising that Al-Rumaihi did not proffer this interpretation of Article 31.1(c) earlier in the proceedings because the Court raised the potential application of that exception *sua sponte* and without the benefit of the parties' briefing on the issue. *See* Apr. 15, 2019 Order at 2–3 [Doc. # 77].

In sum, having reviewed the language of the relevant provisions of the Vienna Convention and the case law construing them, the Court concludes that Article 31.1 confers immunity upon Al-Rumaihi from this Court's jurisdiction, and Al-Rumaihi has demonstrated that Article 31.1(c)'s exception to that immunity does not apply to his pre-appointment conduct. As all of the SAC's allegations against Al-Rumaihi arise out of such activities, the Court lacks subject matter jurisdiction over Plaintiffs' claims against him. Therefore, the Court **DISMISSES** Al-Rumaihi from this action **without prejudice**. *See Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988) ("Ordinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice so that a plaintiff may reassert his claims in a competent court.").

### III.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Sabi's MCA, **GRANTS** Al-Rumaihi's MTD, **DISMISSES without prejudice** all of Plaintiffs' claims against Al-Rumaihi, and **STAYS** the remainder of this action and places it on inactive status pending the completion of Plaintiffs' arbitration against Sabi. Plaintiffs and Sabi shall notify the Court within **ten days** after the receipt of an arbitral ruling or other disposition of their dispute, whichever is later, and inform

| | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>CIVIL MINUTES—GENERAL | JS-6 |
|---|---|---|
| Case No. | CV 18-3466 DMG (SKx) | Date  July 11, 2019 |
| Title | *Big3 LLC, et al. v. Ahmed Al-Rumaihi, et al.* | Page  9 of 9 |

the Court how they wish to proceed with Plaintiffs' claims against Sabi.  The July 12, 2019 hearing on Al-Rumaihi's MTD is **VACATED**.

**IT IS SO ORDERED.**